RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0083P (6th Cir.)
File Name: 02a0083p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 01-5223

SYLVESTER WARE,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 00-00033—Curtis L. Collier, District Judge.

Argued: January 30, 2002

Decided and Filed: March 8, 2002

Before: RYAN and GILMAN, Circuit Judges; POLSTER,
District Judge.

---

## COUNSEL

**ARGUED:** Charles G. Wright, Jr., Chattanooga, Tennessee,
for Appellant. Gary Humble, ASSISTANT UNITED
STATES ATTORNEY, Chattanooga, Tennessee, for

---

*The Honorable Dan A. Polster, United States District Judge for the
Northern District of Ohio, sitting by designation.

1

Appellee. **ON BRIEF:** Charles G. Wright, Jr., Chattanooga, Tennessee, for Appellant.  Gary Humble, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.  Sylvester Ware was convicted on two counts of mail fraud.  He appeals his conviction on one of those counts, arguing that the government failed to offer sufficient evidence to establish his guilt.  Ware also contends that the district court erred in overstating the amount of loss attributable to him for sentencing purposes.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

This case arises from Ware's role in a scheme designed to defraud insurance companies.  Ware participated in the scheme by intentionally providing false information on applications for hospital indemnity policies.  The type of policy in question pays a fixed-dollar benefit directly to the insured for each day that the insured spends in the hospital.  Ware and his girlfriend, Marie Long, eventually obtained 12 such policies that listed Ware as the insured.  Long later filed false claims under the policies that she and Ware had fraudulently obtained.

In March of 2000, a federal grand jury in the Eastern District of Tennessee indicted Ware and Long, along with a third codefendant, on various counts of mail and health care fraud pursuant to 18 U.S.C. §§ 1341, 1347. Ware was named in four of these counts.  Count 9 charged Ware with mail fraud in connection with an insurance application submitted to the Standard Life and Accident Insurance Company (Standard Life).  He was charged in Count 10 with mail fraud arising from an application for insurance with the Mutual of

Omaha Insurance Company (Mutual of Omaha). Counts 20 and 21 alleged that Ware committed health care fraud by filing false claims with Standard Life and Mutual of Omaha, respectively.

The case against Ware was tried to a jury in September of 2000. Insurance agents from both Standard Life and Mutual of Omaha testified on behalf of the government. These agents stated that they had obtained hospital indemnity policies for Ware in 1996. They further testified that the applications for these policies reflected Ware's representation that he had not been treated for any medical ailments within the last 2 to 10 years and that he had no pending applications for health insurance. Following this testimony, the government presented proof showing that Ware had in fact been treated for both back pain and alcoholism in 1995, and that he had applied for other insurance policies prior to the date that he submitted the Standard Life application.

After the government rested its case, Ware moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, arguing that the government had not offered sufficient proof to establish his guilt on any of the counts contained in the indictment. The district court denied the motion. Ware then took the stand in his own defense. He admitted that he had signed the insurance application with Standard Life, but he denied that he submitted an insurance application to Mutual of Omaha. Ware instead maintained that his signature on the Mutual of Omaha insurance application had been forged.

The jury returned a guilty verdict on both mail fraud counts. Ware was found not guilty, however, on the two counts of health care fraud. He subsequently filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. In his Rule 33 motion, Ware contended that the jury did not have sufficient evidence to find him guilty on Count 10 (concerning the Mutual of Omaha policy). The district court concluded otherwise, and denied the motion.

Ware later appeared for sentencing, at which time he objected to the amount of loss attributed to him in the Presentence Investigation Report (PSR). The PSR concluded that Ware was responsible for a total loss of $26,717, which was the amount paid on claims made under all 12 of the hospital indemnity policies that listed Ware as the insured. Pursuant to United States Sentencing Guidelines § 2F1.1(b), the loss attributed to Ware led to a four-point increase in his base offense level. Ware challenged the loss calculation, arguing that the loss resulted from the false claims filed by Long rather than himself.

The district court overruled Ware's objection. Ware was then sentenced to 14 months in prison on Counts 9 and 10, to run concurrently. In addition, the district court sentenced Ware to three years of supervised release on each count, also to run concurrently, ordered him to pay $26,717 in restitution, and imposed a special assessment of $100 on each count. This timely appeal followed.

## II. ANALYSIS

### A. Sufficiency of the evidence

Ware contends that the district court erred in concluding that the government had offered sufficient evidence to support the jury's guilty verdict on Count 10, which charged Ware with mail fraud in connection with an application for insurance with Mutual of Omaha. We will sustain a jury's guilty verdict so long as, "after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1994); *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986) (stating that the defendant bears a "heavy burden" in seeking to set aside a jury's verdict based upon the alleged insufficiency of the evidence) (citation and internal quotation marks omitted).

The government, however, argues that the "concurrent sentencing doctrine" is applicable and allows us to avoid the

that he personally obtained. That Long would expand their insurance fraud scheme by obtaining additional policies in Ware's name should have come as no surprise to Ware, who described Long as the driving force behind their illegal activities.

Finally, Ware maintains that the Double Jeopardy Clause of the Fifth Amendment shields him from the loss associated with the false claims submitted to Standard Life and Mutual of Omaha. He points out that the jury acquitted him of actually submitting these claims (as opposed to the mail fraud arising from his role in applying for the underlying policies). But double jeopardy concerns are generally not implicated at the sentencing stage, because sentencing determinations "do not place a defendant in jeopardy of an offense." *Monge v. California*, 524 U.S. 721, 728 (1998). Furthermore, the district court did not punish Ware for filing the false claims with Standard Life and Mutual of Omaha. The court instead recognized that these claims would not have been paid if Ware had not first fraudulently obtained the hospital indemnity policies from the two companies.

Based upon the above, we conclude that the district court did not err in attributing the $26,717 loss to Ware under § 2F1.1(b).

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

loss had other, more proximate causes, a discretionary downward departure—but not a mandatory 'loss' adjustment—might be appropriate."). But Ware never sought a downward departure in the present case, instead claiming that none of the $26,717 loss was attributable to him under § 2F1.1(b). He has therefore waived any claim for a downward departure. *United States v. Shattuck*, 961 F.2d 1012, 1017 (1st Cir. 1992) (holding that the defendant waived a claim for a downward departure based upon "multiple causation" by failing to make the claim in the district court).

Ware is not a compelling candidate for such a departure in any event. He and his codefendants executed a fraudulent scheme that caused a total loss of over $1 million. The $26,717 loss attributed to Ware, therefore, does not "overstate" the seriousness of his criminal conduct. U.S. Sentencing Guidelines Manual § 2F1.1, comment. n.11 (stating that a "downward departure may be warranted" where the total dollar loss that results from the offense "may overstate the seriousness of the offense").

Ware also argues that he submitted applications for only 3 of the 12 insurance policies obtained in his name, with Long being solely responsible for submitting applications for the remaining 9 policies. He thus contends that, even if he must bear responsibility for the false claims filed by Long, only the loss arising from the claims filed under the 3 policies that he personally obtained is attributable to him.

This argument lacks merit. Although Ware claims that Long obtained 9 of the 12 insurance policies on which fraudulent claims were later filed, Ware bears responsibility for Long's conduct pursuant to United States Sentencing Guidelines § 1B1.3(a)(1)(B). This section provides that, for sentencing purposes, a defendant is accountable for "all reasonably forseeable acts . . . of others in furtherance of [a] jointly undertaken criminal activity." Ware does not dispute that he and Long acted together in obtaining various insurance policies under false pretenses. He acknowledges, for instance, that Long paid all of the premiums on the 3 policies

need to review Ware's challenge to his conviction on Count 10. This doctrine provides that "an appellate court may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989). The government points out that Ware admits his guilt as to Count 9, on which he was given a sentence equal to the one he received on Count 10. Because the district court ordered the periods of incarceration and supervised release on Counts 9 and 10 to run concurrently, the government maintains that setting aside Ware's conviction on Count 10 would have no consequence. The government thus urges us to refrain from considering the merits of Ware's challenge to his conviction on Count 10.

This argument would be persuasive were it not for the fact that the district court ordered Ware to pay a $100 special assessment for each count of conviction. In *Ray v. United States*, 481 U.S. 736, 737 (1987) (per curiam), the Supreme Court held that the concurrent sentencing doctrine is inapplicable where a defendant must pay an assessment on each count of conviction. Accordingly, we must consider the merits of Ware's challenge to his conviction. *United States v. Wade*, 266 F.3d 574, 579 (6th Cir. 2001) (refusing to apply the concurrent sentencing doctrine where the district court imposed a $100 special assessment on each of the twenty counts for which the defendant was convicted).

Turning now to the jury's guilty verdict on Count 10, Ware contends that the government failed to prove beyond a reasonable doubt that he submitted a false insurance application to Mutual of Omaha. Ware acknowledges that Mutual of Omaha received a false application in his name, but he maintains that Long forged his signature on that application.

To prove that Ware completed and personally signed the Mutual of Omaha insurance application, the government offered the testimony of Mitch Wilson. Wilson, an insurance

agent, testified that he processed an application for a Mutual of Omaha hospital indemnity policy that bore Ware's signature. Although he conceded that he could not recall personally meeting with Ware during the application process, which occurred approximately four years prior to Ware's trial, Wilson nevertheless explained that it is his "standard procedure" to meet with every insurance applicant. He testified that, during such a meeting, he asks the applicant each of the questions on the insurance application, fills in the answers given by the applicant, and then witnesses the applicant's signature. Wilson further stated that he had no reason to believe that this standard procedure was not followed with regard to Ware's application.

Ware argues that Wilson's testimony was insufficient to prove that he submitted the application to Mutual of Omaha. We disagree. Wilson testified that he routinely interviews insurance applicants and observes them sign their applications. The jury could have reasonably inferred from this testimony that Wilson followed his standard procedure in processing Ware's application, and that Ware therefore signed the application. *See* Fed. R. Evid. 406 ("Evidence of the habit of a person or of the routine practice of an organization . . . is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."); *United States v. Collins*, No. 93-3722, 1994 WL 678504, at *2 (7th Cir. Dec. 5, 1994) (unpublished table decision) (stating that Rule 406 habit evidence "may establish [a defendant's] guilt beyond a reasonable doubt").

For the reasons set forth above, we hold that the district court correctly determined that the jury's guilty verdict on Count 10 is supported by sufficient evidence.

## B.   Attribution of loss

Ware next claims that the district court erred in calculating the amount of loss attributable to him pursuant to United States Sentencing Guidelines § 2F1.1(b), a section that increases a defendant's offense level based upon the amount

of monetary loss caused by his fraudulent conduct. We will set aside a district court's factual finding with regard to the amount of loss attributed to a defendant under § 2F1.1(b) only if we conclude that the finding is clearly erroneous. *United States v. Ellerbee*, 73 F.3d 105, 108 (6th Cir. 1996). A factual finding is clearly erroneous where, although there is evidence to support that finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

The district court concluded that the PSR correctly held Ware accountable for a loss of $26,717, the total amount paid on false claims made under the 12 hospital indemnity policies that listed Ware as the insured. This loss calculation was conservative, in the district court's view, because the overall scheme executed by Ware and his codefendants caused a total loss of more than $1 million. Ware nevertheless challenges the loss attributed to him under § 2F1.1(b), arguing that he was not directly responsible for any loss.

Specifically, Ware maintains that the loss at issue was caused primarily by Long, who filed all of the false claims made under the policies. But Ware acknowledges that his conduct was a "factual prerequisite" to the loss. His counsel, in fact, conceded during the sentencing hearing that "if [Ware] had not filled out those applications and been accepted, . . . the loss would not have occurred." Ware's contention thus boils down to the argument that Long is more responsible for the loss than he is.

Loss is attributable to a defendant under § 2F1.1(b), however, even where there are other, more direct causes for that loss. *United States v. Reeder*, 170 F.3d 93, 109 (1st Cir. 1999) ("Any portion of the total loss sustained by the victim as a consequence of factors extraneous to the defendant's criminal conduct is not deducted from total 'victim loss' prior to the determination of the applicable guideline sentencing range pursuant to § U.S.S.G. 2F1.1(b)(1)."); *United States v. Kopp*, 951 F.2d 521, 531 (3d Cir. 1991) ("To the extent actual