NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0644n.06

No. 08-4178

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Oct 08, 2010**

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellee, | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| v. | ) | |
| | ) | |
| LEWIS E. LARCH, JR., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE:  GIBBONS and COOK, Circuit Judges, and VAN TATENHOVE, District Judge.**[*]

**GREGORY F. VAN TATENHOVE, District Judge.**  Lewis E. Larch, Jr. challenges the sufficiency of the evidence used to convict him of federal firearms charges and the inclusion and omission of certain jury instructions at his trial.  Because the government presented sufficient evidence that Larch knowingly possessed the firearms in question and because the district judge's instructions to the jury were proper, we affirm.

**I.**

In the Spring of 2008, Larch stood trial for being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1) and possessing stolen firearms in violation of 18 U.S.C. § 922(j).  The evidence presented over the course of two days unfolded as follows.

---

[*] The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

In 2004, Michael and Karla Sheehan resided in Avon Lake, Ohio, with their college-aged son, who had returned home for the summer. One afternoon and evening, Mr. and Mrs. Sheehan attended an impromptu family picnic. Before leaving, Mrs. Sheehan, who had just returned from a weekend trip, left her suitcase on an upstairs bed. Mr. Sheehan locked all of the doors and turned off all of the lights.

At approximately 9:30 or 10:00 p.m., the Sheehans returned from the picnic to find their house burglarized. After briefly entering the residence, they exited and reported the intrusion to the police.

Officer Susan Stevens and Detective Timothy Schleicher from the Avon Lake Police Department investigated the burglary. During their initial walkthrough, Stevens observed that a window to the home's enclosed back porch, approximately five feet from the ground, was halfway open and that the window blinds had been bent and pulled off from their moorings. A large, clay flower pot was situated directly under the window. Inside the porch, a door leading to the interior of the home had been kicked in. From this evidence, Schleicher and Stevens concluded that the porch window was the point of entry for the burglar.

The first floor of the house was in disarray. In addition to the overall ransack, an entertainment center had been pulled away from the wall and its two glass doors were lying on the floor. Mrs. Sheehan's unpacked suitcase had been moved to a couch downstairs. The upstairs showed similar signs of looting.

After the police's initial inspection, the Sheehans entered the house to identify missing property. They found their daughter's wedding presents and a large, four-foot long duffel bag

missing from the dining room. Electronics were also stolen from the living room, and jewelry and their son's video game system had been taken from the second floor.

Mr. Sheehan also noticed the absence of the six firearms identified in the indictment. He testified that two weeks earlier he moved the weapons to underneath his daughter's bed while the master bedroom, where he normally kept the guns, underwent renovations as part of a long-term remodeling project. The firearms were stored in hard and soft cases with handles. A seventh rifle, which remained in the master bedroom closet, was not missing.

The day after the invasion, the Sheehans discovered an unfamiliar camouflage hat in the master bedroom. Believing that it might belong to the burglar, they turned it over to Officer Stevens, who entered the hat into evidence. Detective Schleicher examined the hat but, believing it would pose chain-of-custody problems and contained no useful evidence, decided not send it for forensic analysis.

On that same day, Officer Stevens filed a report listing the Sheehans' missing property. One entry stated, "Pottery change dish emptied of change by *suspects*, entered into evidence for processing." Stevens testified at trial that the word "suspects" was not meant to imply that she knew more than one person had been involved in the burglary.

Despite dusting other parts of the house, including the point of entry and the upstairs bedroom, only two identifiable fingerprints were recovered. Both were found on the entertainment center glass doors in the living room. Two independent analyses determined that the prints belonged to Larch.[1]

---

[1] Although Larch initially objected to the reliability of the fingerprint analysis, he chose to abandon this challenge at trial.

Two years after the burglary, a Cleveland narcotics officer recovered three of Mr. Sheehan's firearms in the course of an unrelated investigation. The other firearms have not been recovered.

At the close of the government's proof, Larch chose not to call any witnesses. Instead, he moved for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, arguing that there was insufficient evidence to show that he possessed – either actually, constructively, or jointly – the firearms taken from the Sheehan residence. The district judge denied the motion, and proceeded to conduct the charge conference.

During the conference, Larch objected to an instruction that the possible guilt of other persons is not a defense to a criminal charge. Since the defendant's theory was that a third party took the weapons without his knowledge or permission, Larch argued that this instruction could only confuse the jury and prejudice his defense. The judge overruled the objection but modified the instruction in response to defense counsels' concerns.

The jury returned guilty verdicts on both counts. Subsequently, Larch filed a renewed motion for acquittal pursuant to Rule 29, and the court issued a written opinion denying the motion. Upon the entry of judgment, Larch filed a timely notice of appeal. He challenges the sufficiency of the evidence that he knowingly possessed the firearms and the district court's denial of his Rule 29 motion. He also challenges the inclusion of the "guilt of others" instruction and the omission of an instruction relating to constructive possession through a co-conspirator.

**II.**

**A.**

The Court reviews Larch's challenge to the sufficiency of the evidence and the district court's denial of his Rule 29 motion according to the same standard. *United States v. Davis*, 397 F.3d 340,

344 (6th Cir. 2005) (citing *United States v. Bowker*, 372 F.3d 365, 387 (6th Cir. 2004)). In both situations, relief will be denied so long as "after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Id.* (quoting *United States v. Ware*, 282 F.3d 902, 905 (6th Cir. 2002)). In applying this standard, the Court makes a *de novo* assessment. *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006). Nevertheless, a defendant raising a sufficiency of the evidence challenge "bears a very heavy burden" and "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *Id.* (internal quotation marks and citations omitted).

To convict Larch of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), the government was required to prove beyond a reasonable doubt that (1) the defendant had a prior conviction for a crime punishable by imprisonment for a term exceeding one year; (2) the defendant thereafter knowingly possessed the firearms specified in the indictment; and (3) the firearm traveled in or affected interstate commerce. *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008) (citing *United States v. Schreane*, 331 F.3d 548, 560 (6th Cir. 2003)). Possession of a stolen firearm pursuant to § 922(j) differs in that no proof of a prior felony is required and the government must show that the defendant knowingly possessed a stolen weapon. *United States v. Thomas*, No. 08-6471, 2010 WL 2294535, at *8 (6th Cir. June 7, 2010).

Larch only challenges the "knowing possession" requirement of these offenses. This element may be based on either actual or constructive possession of a firearm. *Campbell*, 549 F.3d at 374. In essence, Larch argues that the United States proved only two facts, *i.e.*, that he entered the Sheehan residence and that the firearms went missing at some point in time after Mr. Sheehan

relocated the weapons to his daughter's bedroom. He contends that these facts are insufficient to establish that he possessed the guns either actually, constructively, or jointly. This argument is unpersuasive.

First, a reasonable trier of fact could conclude that Larch actually possessed the firearms in question. "Actual possession requires that a defendant have immediate possession or control of the firearm . . . ." *Campbell*, 549 F.3d at 374. Like constructive possession, it may be proven either by direct or circumstantial evidence. *Id.* The evidence presented at trial showed more than Larch's mere presence in the Sheehan house and the independent disappearance of the firearms. It also confirmed that he entered the residence with the intent to steal their belongings. Larch did not know the Sheehans and entered their home at a time when they were away. His fingerprints were found on the glass doors to the entertainment center, from which a DVD player had been taken. Other rooms throughout the house were ransacked, including the bedroom where the firearms had been stored. In fact, Larch concedes that the government presented sufficient evidence to prove that he invaded the home and stole the DVD player and the wedding gifts in the dining room. A reasonable jury could believe that the person who forcibly entered another's home and stole some of that person's property also possessed other property stolen from the residence.

The jury could also reasonably conclude that Larch constructively possessed the firearms. "[C]onstructive possession exists when the defendant does not have [actual] possession but instead knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others." *Campbell*, 549 F.3d at 374 (internal quotation marks and citation omitted). However, the defendant's mere presence near a firearm is insufficient to show the "requisite knowledge, power, or intention to exercise control over the gun to prove constructive

possession." *Id.* (quoting *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007)). Instead, "[o]ther incriminating evidence must supplement the defendant's proximity to a firearm in order to tip the scale in favor of constructive possession." *Id.* And that is this case.

Larch argues that the government proved his proximity to the firearms and nothing more. Accordingly, he believes his case resembles *United States v. Beverly*, 750 F.2d 34 (6th Cir. 1984). There, the defendant, Beverly, had been present in the home of a third party when a police officer executed a search warrant of the residence. *Id.* at 35. The police officer encountered the defendant in the kitchen and ordered him to turn around and place his hands on the wall. *Id.* While frisking Beverly, the officer noticed that a waste basket by his feet contained two handguns. *Id.* One identifiable fingerprint, later determined to be of Beverly's left ring finger, was recovered from one of the gun barrels. *Id.* at 36. A jury convicted Beverly for violating 18 U.S.C. § 922(h)(1), and the district court denied his motion for acquittal under Rule 29. *Id.* at 35. This Court reversed. It concluded there was insufficient evidence that Beverly constructively possessed the weapons because he did not have direct or indirect control over the kitchen, the waste basket, or the gun, and the evidence merely established that Beverly was in close proximity to the firearm and had at some point touched it. *Id.* at 37. By analogizing his situation to *Beverly*, Larch essentially argues that the evidence of Beverly's constructive possession is stronger than his own.

But Larch overlooks the key distinction between his situation and Beverly's: he entered the Sheehan residence as a burglar; Beverly was merely a social guest. This distinction provides the additional "incriminating evidence" necessary "to tip the scale in favor of constructive possession." *Campbell*, 549 F.3d at 374. As the district court recognized, one who enters another's house with

the intent to steal, by definition, demonstrates the power and intention to exercise dominion and control over the personal property therein.

Larch attempts to divert attention from these facts by rearguing his theory that a third person took the firearms without his knowledge. That theory is based on the absence of direct, physical evidence linking him to the second floor of the residence, the discovery of the camouflage hat, the recovery of three firearms from an unrelated person, and the reference to "suspects" in Officer Stevens's report. He also emphasizes that since Mr. Sheehan did not directly testify to seeing the weapons on the day of the burglary, the possibility exists that other persons – a construction worker, the Sheehans' son, or another burglar – had access to the Sheehan residence in the weeks leading up to the theft. However plausible these arguments may be, they do not render the jury's verdict irrational. After all, "[c]ircumstantial evidence alone is sufficient to sustain a conviction and *such evidence need not remove every reasonable hypothesis except that of guilt*." *Kelley*, 461 F.3d at 825 (emphasis added) (internal quotation marks and citation omitted). Moreover, in determining whether sufficient evidence of possession exists, the Court must view all evidence and resolve all reasonable inferences in favor of the government and may not independently weigh the evidence, consider the credibility of witnesses, or substitute its judgment for the jury's. *United States v. Davis*, 577 F.3d 660, 671 (6th Cir. 2009). Accordingly, we find that the government presented sufficient evidence that Larch actually and constructively possessed the firearms in question.

**B.**

**1.**

Larch also seeks reversal because of one jury instruction that was given and one that was not. The given instruction related to the impact of the possible guilt of others on the jury's deliberations.

In general, jury instructions are reviewed "as a whole [] to determine whether they fairly and adequately inform the jury of the relevant considerations and provide a sound explanation of the applicable law to aid the jury in reaching its decision." *United States v. Harrod*, 168 F.3d 887, 890 (6th Cir. 1999) (internal quotation marks and citation omitted). "This court may reverse a judgment based on an improper jury instruction only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Id.* at 892 (internal quotation marks and citation omitted).

Before the charge conference, the district court indicated its intention to include Sixth Circuit Pattern Instruction 8.08(2). Larch objected. He believed this instruction would confuse the jury and encourage it to disregard his defense that a third party took the firearms without his knowledge or approval. He also emphasized that the first and last sentences were particular sources of confusion and prejudice.

The district judge overruled Larch's objection. She concluded that inclusion of this instruction was proper but modified the first sentence and omitted the final sentence to accommodate the Appellant's concerns. As a result, the final instruction delivered to the jury read:

> Also remember that the fact that someone else may also be guilty of the offenses charged would not prohibit you from reaching the conclusion that this defendant is guilty of the crimes charged. The possible guilt of others is no defense to a criminal charge. Your job is to decide if the government has proved this defendant guilty.

It is certainly possible that this instruction could prove misleading in some cases. In fact, the official commentary to the pattern instruction recognizes as much. *See Committee Commentary to*

*Sixth Circuit Pattern Instruction 8.08* ("Where the defendant claims that someone else committed the crime, it may be confusing to instruct the jurors that they should not be concerned with anyone else's guilt."). In this situation, however, the instruction was neither confusing nor prejudicial. It places appropriate emphasis on the jury's obligation to determine whether the evidence conclusively proved the defendant guilty of the charged offense and that it should not permit the possible *additional* criminal liability of others to influence its decision. This duty was expressly underscored in the first ("someone else may *also* be guilty") and final ("your job is to decide if the government has proved *this defendant* guilty") sentences of the instruction. In the context of the other substantive instructions, this meant that the jury was to judge whether Larch actually, constructively, or jointly possessed firearms regardless of the actions of third parties. Consequently, when read in its entirety, the instruction conveys only its intended purpose: to ensure that a defendant is not excused from being held accountable *for his actions* simply because someone else *also* unlawfully possessed Sheehan's firearms. In sum, the delivered instruction neither prevented Larch from presenting his defense to the jurors nor they from duly considering it. We therefore conclude that the "guilt of others" instruction was not confusing, misleading, or prejudicial.

**2.**

Larch also contends that the district court erred in failing to instruct the jury on constructive possession through a co-conspirator. He admits that he did not specifically request this instruction or object to its omission during trial. Instead, he argues that he preserved the issue by apprising the district court of his theory that a third party stole the firearms without his knowledge or approval in the course of objecting to the "guilt of others" instruction. This is not sufficient. Under Federal Rule of Criminal Procedure 30(d), parties who object to instructions must "inform the court of the *specific*

-10-

*objection* and the *grounds for the objection*." FED. R. CRIM. P. 30(d) (emphasis added). Larch's discussion of his defense theory is far too generic to meet this standard. *See, e.g., United States v. McCall*, 85 F.3d 1193, 1195-96 (6th Cir. 1996); *see also* FED. R. CRIM. P. 30(d).

Under the plain error standard, the defendant bears the burden of proof. *United States v. Polihonki*, 543 F.3d 318, 323 (6th Cir. 2008). To prevail, therefore, Larch "must show that there is (1) error, (2) that is plain, and (3) that affects [his] substantial rights." *Id.* (alteration in original) (quoting *United States v. Lalonde*, 509 F.3d 750, 757 (6th Cir. 2007)); *United States v. Olano*, 507 U.S. 725, 732 (1993). Even if these three conditions are satisfied, reversing the district court is within this Court's discretion. *Olano*, 507 U.S. at 735 ("Rule 52(b) is permissive, not mandatory. If the forfeited error is 'plain' and 'affect[s] substantial rights,' the court of appeals has authority to order correction, but is not required to do so." (alteration in original)). In such circumstances, the court's discretion is guided by whether the error "seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Jones*, 108 F.3d 668, 670 (6th Cir. 1997); *Olano*, 507 U.S. at 736. Moreover, "[a]n omitted or incomplete instruction is even less likely to justify reversal, since such an instruction is not as prejudicial as a misstatement of the law." *United States v. Sanderson*, 966 F.2d 184, 187 (6th Cir. 1992) (internal quotation marks and citation omitted).

Larch has failed to show that the failure to instruct the jury on constructive possession through a co-conspirator was plain error. *See Olano*, 507 U.S. at 732-34 (defining "error" as a deviation from a legal rule and "plain" as "clear" or "obvious"). His legal theory arises most often in the context of sentencing under U.S.S.G. §2D1.1. *See United States v. Bender*, 265 F.3d 464, 474 (6th Cir. 2001) ("This court has consistently held that possession of a firearm under section

2D1.1(b)(1) is attributable to a co-conspirator not present at the commission of the offense as long as it constitutes reasonably foreseeable conduct." (internal quotation marks and citation omitted)). But he has not cited any case where this theory was presented to a jury, and our own search has been in vain. We are unwilling to reverse a district court for failing to instruct the jury, *sua sponte*, on such an entrepreneurial theory as the one raised by the defendant here.

Even if this theory was firmly entrenched, based on the evidence presented it is far from certain that Larch would be entitled to it. Although the defendant's burden in obtaining a jury instruction is not heavy, and an instruction should be given if it "finds some support in the evidence" or when the "supporting evidence is weak or of doubtful credibility," *United States v. Garner*, 529 F.2d 962, 970 (6th Cir. 1976), Larch's theory that a co-conspirator was present tests the limits of even this lenient standard.

Moreover, Larch has not shown that the omission of this instruction affected his substantial rights. In most cases, this requires the defendant to show that the error affected the outcome of the district court's proceedings. *Jones*, 108 F.3d at 672; *Olano*, 507 U.S. at 734. This burden is insurmountable for him because, as already discussed, the jury could reasonably find that he either actually, constructively, or jointly possessed the stolen firearms.

Finally, even if plain error was present, this is not the case in which we would use our discretion to reverse the district court. *Jones*, 108 F.3d at 672. The discretion conferred by Rule 52(b) is usually reserved to those circumstances in which a miscarriage of justice would otherwise result. *Id.* (citing *Olano*, 507 U.S. at 736). "Miscarriage of justice" can mean that the defendant was actually innocent or that the error "seriously affect[s] the fairness, integrity, or public reputation

of judicial proceedings." *Id.* (alteration in original) (internal quotation marks and citation omitted).

In this case, Larch had every opportunity to request whatever jury instruction he desired but failed to request anything comparable to the instruction of which he now seeks the benefit. *See, e.g., McCall*, 85 F.3d at 1195-96 (finding no plain error when the defendant presented evidence of an alibi defense but failed to request such instruction at trial because the district court was deprived of the knowledge that the defendant desired the instruction or the opportunity to correct his failure to object to its omission). Moreover, a jury concluded that he —not a co-conspirator— exercised either actual, constructive, or joint possession over the firearms. Under these circumstances, we see no miscarriage of justice.

## III.

For the foregoing reasons, the conviction of the appellant, Lewis E. Larch, Jr., is **AFFIRMED**.