**NOT FOR FULL-TEXT PUBLICATION**
**File Name:  12a0058n.06**

**No. 11-1219**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

*Jan 13, 2012*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

        **Plaintiff-Appellee,**

v.

MOHAMED ABUKAR SUFI,

        **Defendant-Appellant.**

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

BEFORE:    SUHRHEINRICH, SUTTON, and COOK; Circuit Judges.

       **SUHRHEINRICH, Circuit Judges.**  Defendant Mohamed Sufi (Mohamed) pled guilty to conspiracy to commit food stamp fraud, operate an unlicensed money transfer business, and structure currency transactions to evade reporting requirements; and to substantive counts of the underlying crimes.  He raises several issues pertaining to his sentence on appeal.  We affirm.

### I.  Background

       In September 2005, Mohamed and his brother and coconspirator Omar Sufi opened the Halal Depot, a small grocery store in Wyoming, Michigan.  The Halal Depot applied for and became an authorized redeemer of both food stamps and Women and Infant Children (WIC) program benefits.  The brothers unlawfully converted food stamp and WIC benefits into cash, operated an unlicensed money transfer business, and structured currency transactions to evade reporting requirements.  The

-1-

United States Department of Agriculture (USDA) began a criminal investigation of the store after receiving a letter in November 2007 that the Sufis were exploiting the local Somali community by trafficking in food stamps, selling drugs, and wiring food stamp money overseas. Federal USDA agents executed a search warrant for the Halal Depot. Mohamed was interviewed by federal agents subsequent to the search. Mohammed admitted that he and Omar had been redeeming food stamp benefits for cash and taking a commission, and that he had been running an unlicensed, "Hawala" or money transfer business, from the store. Mohamed also provided a handwritten confession.

The Sufis were charged with conspiracy, in violation of 18 U.S.C. § 371 (Count 1); food stamp fraud, in violation of 7 U.S.C. § 2024 (Count 2); operating an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960(a) (Count 3); and four counts of structuring financial transactions to evade reporting requirements, in violation of 31 U.S.C. § 5324(a)(1), (d) (Count 4-7). Only one of the structuring counts, Count 4, applied to Mohamed. Mohamed pleaded guilty to Counts 1, 2, and 3. Pursuant to a plea agreement with the government, Count 4 was dismissed at sentencing.

Mohamed was thirty-one years old at sentencing. He was born in Somalia and came to the United States as a refugee in 1996. He became a naturalized citizen, graduated from high school, and obtained some college education.

Based on a total offense level of 18 and a criminal history category of I, the presentence report calculated the guidelines range at 27-33 months. The presentence report set the loss at $401,670.24 for the food stamp and WIC programs, and $254,235 for the unlicensed money transfer business. The brothers also structured at least $42,290.

Mohamed objected to the calculation of loss and restitution. Mohamed also moved for a downward variance based on his childhood experiences as a refugee, his substantial contributions to the community, the lack of need to protect the public, and his status as a first-time offender. The government opposed the motion, arguing that the defendants had eroded public support for social welfare programs, had deliberately circumvented banking controls designed to thwart funding for narcotics trafficking and terrorism, and had abused the trust of both the Somali community and their adoptive country.

The district court felt that the advisory guidelines were too low for a theft of this scale that involved an abuse of trust, and sentenced Mohamed to sixty months imprisonment on each count, to be served concurrently, three years supervised release, and $401,670.24 in restitution (joint and several with codefendant Omar). Omar received the same sentence after a separate sentencing hearing.[1]

On appeal, Mohamed argues that the district court (1) relied on an incorrect estimate of loss in determining the loss amount; (2) erred in sentencing him outside the advisory guidelines range; (3) gave improper weight to certain factors under § 3553(a); (4) did not consider whether the sentence created an unwarranted disparity; (5) improperly focused on Mohamed's naturalized citizen status; and (6) imposed an incorrect order of restitution based on its flawed estimate of the loss amount.

---

[1]The brothers filed a joint motion for purposes of determining the loss amount. The district court denied it.

## II.  Analysis

This court reviews a district court's sentencing decision for reasonableness, under a deferential, abuse-of-discretion standard.  *Gall v. United States*, 552 U.S. 38, 40 (2007);  *Rita v. United States*, 551 U.S. 338, 364 (2007).  Reasonableness has both a substantive and a procedural component.  *See Gall,* 552 U.S. at 51; *United States v. Madden*, 515 F.3d 601, 609 (6th Cir. 2008).  A sentence is procedurally unreasonable if the court improperly calculated the guidelines range, treats the guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence. *Gall*, 552 U.S. at 51.  To be substantively reasonable, the sentencing court is required to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" or need for the sentence. 18 U.S.C. § 3553(a).  A sentence may be substantively unreasonable if the court fails to consider relevant sentencing factors or gives an unreasonable amount of weight to any pertinent factor. *United States v. Jones*, 489 F.3d 243, 252 (6th Cir. 2007).  "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010).

### A.  Loss Calculation

Mohamed argues that the district court erred in not using the net loss approach, (subtracting legitimate food sales from food stamp redemptions), relying instead on unverified estimates based on loosely comparable stores.  We review a district court's fact findings at sentencing as to loss and restitution for clear error, and its methodology for calculating loss de novo.  *United States v.*

*McCarty*, 628 F.3d 284, 290 (6th Cir. 2010). A fact finding is clearly erroneous if, despite evidence to support that finding, the reviewing court has a firm conviction that a mistake has been committed. *United States v. Ware*, 282 F.3d 902, 907 (6th Cir. 2002) (citations omitted). The Sentencing Guidelines require the district court to determine the amount of loss by a preponderance of the evidence. *McCarty*, 628 F.3d at 290.

The Sentencing Guidelines also require that the district court make only a reasonable estimate of the loss. U.S. Sentencing Guidelines Manual § 2B1.1, cmt. n.3(C) (Nov. 2010); *United States v. Triana*, 468 F.3d 308, 320 (6th Cir. 2006) (stating that "[i]n situations where the losses occasioned by financial frauds are not easy to quantify, the district court need only make a reasonable estimate of the loss, given the available information"). This is because "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference." U.S.S.G. § 2B1.1, cmt. n.3(C). Precision is not required. *Triana*, 468 F.3d at 320 (citation omitted).

The district court was presented with two competing methodologies for calculating loss. Special Agent Travis Deters of the USDA Office of the Inspector General testified for the government at Mohamed's sentencing hearing. He stated that he took monthly food stamp redemption data collected by the Food and Nutrition Service (FNS) from comparable "small grocery" stores within a five-mile radius of the Halal Depot,[2] averaged these stores' redemptions, and subtracted the average amount from the Halal Depot's redemptions to arrive at an estimated

---

[2]Deters explained that FNS has set criteria for every store type. (R.106 S. Tr. at 24.)

fraud loss for each month. Deters testified that the store's filing system consisted of plastic bags stuffed with unspecified receipts and papers.[3] Nonetheless, Deters gave the defendants credit for having at least as much legitimate food sales as the average comparable store in the vicinity. The Halal Depot's redemptions were four to ten times higher than the average redemptions at the comparable stores. Deters testified that the total fraud loss attributable to food stamp fraud was $397,140.24. Deters used the same comparison average methodology to compute the WIC fraud loss, and calculated over $4,000 in WIC fraud. Thus, the total food stamp and WIC fraud was over $400,000. [4]

As the district court held, the net loss model could not be applied in this case because the Halal Depot lacked the records to support that approach. The comparison average method provided an objective approach to the loss calculation. Mohamed offered no credible evidence to contradict it. We hold that the district court's estimate of loss was reasonable, based on a preponderance of the evidence, incorporating by reference our reasoning on this issue in Omar's appeal (No. 11-1190).

## B. Upward Variance

---

[3]By contrast, the defendants kept a ledger documenting money transfers to Somalia and other countries in Africa and the Middle East. (PSR ¶ 34.) The ledgers recorded the name and information of the sender, the name and information of the recipient, the country where the money was being sent, and the amount. (R.106 S. Tr. at 37-38; PSR ¶ 34.)

[4]U.S.S.G. § 2B1.1(b)(1) states that if the loss exceeds $400,000, add 14 levels. A loss of $200,000 to $400,000 adds 12 to the offense level. The loss calculation here was $401,670.24.

Mohamed challenges the district court's holding that this was not a "heartland" case and that 27-33 months was wholly inadequate to achieve the purposes of § 3553(a). For the reasons stated in Omar's appeal (No. 11-1190), we reject this argument.

### C. Section 3553(a) Factors

Mohamed complains that the district court gave undue weight to the sentencing factors of punishment and promoting respect for the law. He asserts that promoting respect for the law is part of the calculus of every sentence and that his crime was not different than any other government benefits fraud. He also claims that the need for punishment does not justify the court's sentence because he is a first-time offender with strong community support and family ties.

The district court acknowledged that the Guidelines are advisory and its duty to impose a sentence sufficient but not greater than necessary to comply with the purposes of § 3553(a), and examined the factors listed in § 3553(a). As to the nature and circumstances of the offense, the court found that Mohamed committed "a very serious crime" involving "a lot of money" taken out of "an important social program" that expresses the important American value of providing food necessities to the poor. The court also observed that the fraud scheme was multi-faceted because, in addition to food stamp fraud and WIC fraud, it involved illegal money transfers, and avoidance of bank reporting laws.

Against these factors, the court balanced Mohamed's history and characteristics, noting that although he had a difficult childhood, he was thirty-one years old at sentencing, had obtained an associates degree, and was married with a child. The court noted that the crime did not involve violence. The court also found that Mohamed had taken advantage of the opportunities this country

had provided to him. The court felt punishment and respect for the law were important factors

because the "multi-faceted scheme reflect[ed] . . . no respect for the law." As for punishment, the

court stated that Mohamed did not have license "[t]o simply ignore criminal statutes" and steal

because it was easy and did not involve a gun. The court felt that deterrence was important, since

the resources to investigate and prosecute such crimes are limited. The court found that, as for

unwarranted disparities, Mohamed was somewhat more culpable than Omar.

As the foregoing reflects, the district court not only considered all of the relevant § 3553(a)

factors, it did not give improper weight to any one. Mohamed's contention is without merit.

### D. Unwarranted Disparity

Mohamed's argument on appeal is a carbon copy of his brother Omar's brief. We therefore

incorporate by reference our ruling in that case (No. 11-1190.)

We note that, at sentencing, Mohamed's counsel argued that there have been similar cases

nationwide and that those individuals have received shorter sentences. The government objected as

to relevancy. The district court sustained the objection, noting that there was no basis in the record

for making such a comparison. Defense counsel then opted not to discuss any allegedly supportive

cases.[5] In any event, as stated, Mohamed has failed to explain on appeal how the cases he relies on

are in fact comparable. Finally, he failed to object when given the opportunity to do so at the

---

[5]The district court addressed the disparity between Mohamed and his brother, commenting that "if anything, Mr. Mohamed Sufi's behavior is somewhat more reprehensible than that of his brother's", since it was Mohamed who opened the store, filled out the paperwork for the FNS, and who performed all of the illegal transactions with the undercover agents.

conclusion of the sentencing hearing. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). There is no plain error here.

### E. Naturalized Citizen Status

Mohamed alleges on appeal that the district court improperly focused on his naturalized citizen status. Mohamed claims that in seeking a downward variance he merely asked the court to consider his childhood experiences as a refugee. At sentencing, the district court held that Mohamed's early history did not justify a variance and was not relevant. The court also stated that Mohamed's abuse of the opportunities made available to immigrants "welcom[ed]" by this country was "just about as reprehensible as it gets."

Section 5H1.10 states that race, sex, national origin, creed, religion, and socio-economic status are not relevant factors in a sentencing determination. U.S.S.G. § 5H1.10, p.s.. *See also United States v. Onwuemene*, 933 F.2d 650, 651 (8th Cir. 1991) ("[S]entencing an offender on the basis of factors such as race, national origin, or alienage violates the Constitution.").

We find no error. Like his brother Omar, Mohamed sought leniency on the basis of his national origin. At the sentencing hearing, counsel led with a discussion of Somalia until instructed by the court to stick to factors that were "directly relevant to the sentencing decision." Having raised the issue, he cannot now complain that the district court discussed his national origin and naturalized status in response. Furthermore, the record demonstrates that the district court based its sentence on a detailed consideration of all of the § 3553(a) factors rather than his national origin. For the reasons stated in Omar's appeal (No. 11-1190), we reject Mohamed's claim.

## F. Restitution

Mohamed asserts that because the loss determination was wrong, the restitution amount was too. Our resolution of the former issue obviates the need to address this one. *See* 18 U.S.C. § 3664(f)(1)(A) (stating that the court shall order restitution in the full amount of the victim's losses).

## III. Conclusion

The judgment of the district court is AFFIRMED.