RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0259a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

     *Plaintiff-Appellee,*

  *v.*

No. 08-1783

KYLE DWAYNE MOSLEY,

     *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 08-00009-001—Robert Holmes Bell, District Judge.

Argued: April 21, 2009

Decided and Filed: July 23, 2009

Before: BOGGS, Chief Judge; MOORE and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Richard D. Stroba, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant. Christopher M. O'Connor, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Richard D. Stroba, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant. Christopher M. O'Connor, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

**AMENDED OPINION**

_____

  SUTTON, Circuit Judge. At stake in this appeal is whether Kyle Mosley's state-law conviction for resisting and obstructing a police officer, Mich. Comp. Laws § 750.81d(1), is a crime of violence under the sentencing guidelines. We hold that it is not.

1

I.

In 2008, Mosley pleaded guilty to being a felon in possession of a firearm.  *See* 18 U.S.C. § 922(g)(1).  The district court calculated a guidelines range of 77 to 96 months, and it  sentenced Mosley to 96 months.  *See* U.S.S.G. Ch. 5 Pt. A.

One feature of the calculation bears on this appeal.  The district court increased Mosley's base-offense level in part because he had committed a prior "crime of violence." U.S.S.G. § 2K2.1(a)(3); *see also id.* § 4B1.2.  Over Mosley's objection, the court determined that his prior conviction for resisting and obstructing a police officer under Michigan law constituted a crime of violence.

II.

The sentencing guidelines define a "crime of violence" as a felony that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," or (2)(a) "is burglary of a dwelling, arson, or extortion, involves use of explosives" or (b) "otherwise involves conduct that presents a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a); *see also* 18 U.S.C. § 924(e)(1).

Michigan law defines the offense for which Mosley was convicted as applying to an individual who "assaults, batters, wounds, resists, *obstructs*, opposes, or endangers a person whom the individual knows or has reason to know is performing his or her duties."  Mich. Comp. Laws § 750.81d(1) (emphasis added).  The statute defines "obstruct[ing]" as "the use or threatened use of physical interference or force *or* a knowing failure to comply with a lawful command."  *Id.* § 750.81d(7)(a) (emphasis added).

The first question is whether this state-law offense contains a use-of-physical-force element. It does not.  An individual may violate the statute by committing any one of several prohibited actions, and at least one of the prohibited actions does not involve the use—attempted, threatened or real—of physical force.  Under Michigan law, an individual "obstructs" an officer if he "knowing[ly] fail[s] to comply with a lawful command," *id.* § 750.81d(7)(a), which he may do without attempting or threatening to use force.  *See, e.g.*, *People v. Chapo*, No. 281172, __N.W.2d__, 2009 WL 1011172  (Mich. Ct. App. April 14, 2009) (officer had probable cause to arrest defendant for violating § 750.81d when defendant

"refused to comply with an order to exit the vehicle"); *People v. Tice*, No. 256736, 2006 WL 198530, at *4 (Mich. Ct. App. Jan. 26, 2006) (defendant violated § 750.81d "by repeatedly reentering the crime scene after being instructed to stay out of it").

*People v. Vasquez*, 631 N.W.2d 711 (Mich. 2001), is not to the contrary. It held that "obstruct[ing]"—as used in a different statute and as undefined in that statute—included "threaten[ing], either expressly or impliedly, physical interference and actual physical interference with a police officer." *Id.* at 721. A court or a legislature, as an original matter, might well choose to define "obstruct" in this manner. But that is not how the Michigan legislature chose to define it in this statute, where it expressly contains the option of a "knowing failure to comply." A later revision to the statute confirms the point. In 2002, in response to *Vasquez*, the Michigan Legislature enacted § 750.81d(1) and amended the provision at issue in *Vasquez* to include the "knowing failure to comply" language. *See Tice*, 2006 WL 198530, at *4; Mich. Comp. Laws § 750.479. As it stands, § 750.81d(7)(a) incorporates both the definition of obstruction announced in *Vasquez and* "a knowing failure to comply." *Vasquez* does not help the government.

The second question is whether this state-law offense appears in U.S.S.G. § 4B1.2(a)'s list of covered crimes. It does not. Resisting or obstructing a police officer is not burglary of a home, arson or extortion, and it does not involve explosives.

The third question, as is often true in crime-of-violence cases, is the key one: Did Mosley's state-law conviction "otherwise involve[] conduct that presents a serious potential risk of physical injury to another"? Not in our view.

An offense is a crime of violence under the clause if it is "similar, in kind as well as in degree of risk posed," to the enumerated offenses. *Begay v. United States*, __U.S.__, 128 S. Ct. 1581, 1585 (2008). A sentencing court thus needs to establish both requirements to find that an offense qualifies—that the prior crime is alike in its risk of physical injury to others and alike in the "purposeful, violent, and aggressive" nature of the conduct. *Id.* at 1586; *Chambers v. United States*, __U.S.__, 129 S. Ct. 687, 691–92 (2009); *United States v. Ford*, 560 F.3d 420, 421–22 (6th Cir. 2009). In gauging whether an offense satisfies these requirements, we start with a "categorical" approach—classifying the state-law crime, determining whether that definition of the crime satisfies these requirements and ignoring

the actual conduct underlying the conviction. *Taylor v. United States*, 495 U.S. 575, 602 (1990); *Ford*, 560 F.3d at 421–22. If it is possible to violate the state law in a way that amounts to a crime of violence and in a way that does not, we may consider the indictment, the plea agreement, the plea colloquy or "comparable judicial record[s]" to determine whether the individual's actual conduct "necessarily" establishes the nature of the offense. *Shepard v. United States*, 544 U.S. 13, 26 (2005); *Ford*, 560 F.3d at 422.

Often the key analytical move in the case happens at the first step: deciding whether the state-law definition of the offense involves just one category or two or more categories of crimes. Just because a state legislature chooses to place a variety of proscribed acts in one statute (or even one subsection of a statute) does not mean that all of the listed acts must be classified as one category of offense for purposes of defining a "crime of violence" under federal law. The "categorical approach requires courts to choose the right category," as the Supreme Court recently clarified, and sometimes that choice requires the federal courts to draw distinctions that the state law on its face does not draw. *Chambers*, 129 S. Ct. at 690. A single state law, for example, may proscribe burglary of a building and burglary of a vehicle. Yet the federal courts must treat "the two" offenses "as different crimes" because they "differ[] so significantly" from each other, even though they happen to appear in the same statute. *Id.*; *see also Shepard*, 544 U.S. at 16–17. In *Chambers*, the Court found it necessary to treat a single escape statute under Illinois law as involving at least two categories of crimes because there were at least two ways to distinguish the proscribed conduct. *Id.* at 691. In the aftermath of *Chambers*, we recently did the same thing in interpreting a similar Kentucky escape statute. *Ford*, 560 F.3d at 423–24.

In this instance, the Michigan law contains at least one obvious fault line. The offense not only covers an individual who "assaults, batters, [or] wounds" a law enforcement officer, but it also covers an individual who "obstructs" an officer, Mich. Comp. Laws § 750.81d(1), which includes "a knowing failure to comply with a lawful command," *id.* § 750.81d(7)(a). An "assault[]" of an officer and a "knowing failure to comply" with an officer's lawful command, it seems to us, involve "behavior" that "differs so significantly" that they must be treated "as different crimes." *Chambers*, 129 S. Ct. at 690. Just as the failure-to-report offense at issue in *Chambers* differed materially from traditional escape offenses, so do these two crimes. "The behavior that likely underlies a [failure to comply

with a lawful command] would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an [assault]." *Id.* at 691.

To decide this case, we need not determine whether this Michigan law can be—or should be—divided still further. For now, it suffices to conclude that the law contains at least two categories—those violations, on the one hand, involving an individual who physically injures an officer because he "assaults, batters, [or] wounds" the officer, and those, on the other hand, involving an individual who "obstructs" an officer through "a knowing failure to comply with a lawful command," Mich. Comp. Laws § 750.81d(1), (7)(a); *see United States v. Almenas*, 553 F.3d 27, 33–34 (1st Cir. 2009) (holding that "using or threatening to use physical force or violence against [a] police officer or another" and "using any other means which creates a substantial risk of causing bodily injury to such police officer or another" were crimes of violence).

Having determined that a "knowing failure to comply with a lawful command" conviction represents a distinct offense under *Chambers*, we can quickly conclude that it is not a crime of violence under the "otherwise" clause. The offense, for one, does not involve comparable "purposeful, violent, and aggressive" conduct. *Begay*, 128 S. Ct. at 1586. Even though the offense involves conduct that often will be "purposeful," "nothing in the statute . . . requires the offense to involve . . . violence or . . . aggressiveness." *Ford*, 560 F.3d at 423. All the individual must do is know about an officer's lawful order and fail to obey it, no matter the nature of the order, no matter the circumstances. A knowing failure to comply with a lawful command—say, by refusing to produce information, by ignoring an officer's command not to cross the street or by failing to stay put at an accident scene—is no more aggressive and violent than walking away from custody, *id.*, drunk driving, *Begay*, 128 S. Ct. at 1588, or a failure to report to prison, *Chambers*, 129 S. Ct. at 691–93. If these offenses are not crimes of violence, neither is this one.

Nor, for similar reasons, does the offense entail the same degree of risk of physical injury to other individuals as the enumerated offenses. No doubt, there may be settings where an individual's failure to follow an officer's lawful command poses such risks. But we have no basis in this record—empirical or otherwise—for concluding that the typical violation would create such a danger.

In deciding that a "knowing failure to comply with a lawful command" is a crime of violence under the categorical approach, the district court did not have the benefit of *Chambers*. What the court did have the benefit of—an unpublished decision from this court, *see United States v. Merchant*, 288 F. App'x 261, 263–64 (6th Cir. 2008)—did not help matters because that decision held that convictions under this Michigan law *qualified* as crimes of violence. *See also United States v. Bass*, 274 F. App'x 443 (6th Cir. 2008). In *Merchant*, the panel did not consider whether the law could be treated as involving more than one category of offense—indeed, it is not even clear that the point was argued—presumably because the panel did not have the benefit of *Chambers*. Instead, invoking an approach premised on the Supreme Court's earlier decision in *James v. United States*, 550 U.S. 192 (2007), the panel viewed the statute as a whole and considered whether violations of the statute in the main were likely to share the same risk-of-physical-harm and violent-kind-of-crime qualities as the listed crimes. *Chambers* changes the landscape. It is now clear that, before we examine the ordinary behavior underlying a conviction under the statute, we must decide at the outset how to classify violations, and most significantly we must decide whether the statute should be treated as involving more than one category of offense for federal crimes-of-violence purposes. In the aftermath of *Chambers*, a "knowing failure to comply with a lawful command" of a police officer simply is not a crime of violence.

To recap, we know that Mich. Comp. Laws § 750.81d(1) contains at least two categories of crimes, and that at least one of those categories, "obstruct[ing]" based on a "knowing failure to comply with a lawful command," is not a crime of violence. We also know that Mosley's conviction was for a violation of that statute, but we do not know which category his offense falls into. Treating the offense as "containing at least two separate crimes" for purposes of determining the nature of a prior conviction, *Chambers*, 129 S. Ct. at 691, means that we cannot classify Mosley's prior conviction and, at least at the categorical step of the inquiry, it cannot qualify as a crime of violence.

All of this, however, does not necessarily bring the case to an end. Because the district court resolved this matter at the categorical stage under *Taylor*, the government has not had an opportunity to show whether the indictment, the plea agreement, the plea colloquy or "comparable judicial record[s]" show that Mosley "necessarily admitted"

committing a crime of violence.  *Shepard*, 544 U.S. at 26.  It may, for example, turn out that he was convicted for "assault[ing]" an officer, not for failing to comply with an officer's lawful command.  Any such *Shepard* documents are not before us, and the district court at any rate has not had an opportunity to pass on the issue in the first instance.  Much the same is true of the government's alternative argument that another one of Mosley's prior convictions—his conviction for use of a self-defense spray, *see* Mich. Comp. Laws § 750.224d(2)—amounts to a crime of violence.  The district court should be given an opportunity to consider this argument in the first instance as well.

## III.

For these reasons, we vacate Mosley's sentence and remand for resentencing.