*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name:  11a0095p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee,*

  *v.*

    No. 09-5778

CHARLES VANHOOK,

    *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 06-20021-001—J. Daniel Breen, District Judge.

Argued:  October 13, 2010

Decided and Filed:  April 18, 2011

Before:  BATCHELDER, Chief Judge; KEITH and ROGERS, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  Edwin A. Perry, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Jennifer Lawrence Webber, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.  **ON BRIEF:**  Edwin A. Perry, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Jennifer Lawrence Webber, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

_____

**OPINION**

_____

  KEITH, Circuit Judge.  This case arises out of defendant Charles Vanhook's classification as an "armed career criminal" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  At issue before the Court today is Vanhook's appeal of the district court's conclusion that his prior conviction for facilitation of the burglary of

1

a building in violation of TENN. CODE ANN. §§ 39-11-403 and 39-14-402(a) constitutes a violent felony for the purposes of the ACCA. For the reasons discussed below, we find that facilitation of the burglary of a building under Tennessee law is not categorically a violent felony. Accordingly, we **VACATE** the sentence imposed by the district court and **REMAND** the case to the district court for further proceedings consistent with our opinion here.

## BACKGROUND

On August 3, 2006, defendant Charles Vanhook pled guilty to having been a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g).

After Vanhook entered his plea, the probation office for the Western District of Tennessee completed a pre-sentence investigation report ("PSR") identifying the applicable sentencing guidelines for his offense. The PSR concluded that Vanhook qualified as an "armed career criminal" as a result of having committed three violent felonies and, therefore, should be sentenced accordingly. The report identified the three qualifying offenses as two prior convictions for the sale of cocaine in January, 1990 and a conviction for facilitation of burglary in July, 1998. After taking Vanhook's status as an armed career criminal into account, the report concluded that the applicable sentencing range for him was between 188 and 235 months of imprisonment.

On October 27, 2006, Vanhook filed an objection to the report's conclusion that he qualified as an armed career criminal. Vanhook specifically disputed the report's finding that his prior conviction for facilitation of the burglary of a building constituted a violent felony for the ACCA's purposes.

After hearing arguments from both parties, the district court overruled Vanhook's objection, concluded he was an armed career criminal, and sentenced him to 180 months of imprisonment.

On appeal, a separate panel of this Court affirmed the district court's holding that facilitation of burglary constituted a violent felony for purposes of the ACCA. *United States v. Vanhook*, 510 F.3d 569 (6th Cir. 2007), *vacated* 129 S. Ct. 993 (2009). The

panel's decision rested in large part on the law at the time, which did not consider the defendant's state of mind when he committed the allegedly qualifying offenses. The panel specifically relied on this Court's prior decision in *United States v. Sawyers*, 409 F.3d 732 (6th Cir. 2005), in which we found that an individual could have committed a violent felony even if he only "facilitated" the ultimate felonious act. *Vanhook*, 510 F.3d at 574-77.

Vanhook subsequently filed a petition for *certiorari* with the United States Supreme Court. However, before the court could review the petition, the Supreme Court issued its decisions in *United States v. Begay*, 553 U.S. 137 (2008) and *United States v. Chambers*, 555 U.S. 122 (2009), which substantially altered the legal test courts must use when determining whether a prior state court conviction constitutes a violent felony for the ACCA's purposes. In light of its decisions in *Begay* and *Chambers*, the Supreme Court vacated Vanhook's sentence and remanded the case to this Court. *Vanhook*, 129 S. Ct. 993 (2009). We, in turn, remanded the case to the Western District of Tennessee for re-sentencing in accordance with the guidelines set out in *Begay* and *Chambers*.

Vanhook again filed a position paper objecting to the report's finding that he was an armed career criminal. On June 23, 2009, the district court, upon consideration of the issue post-*Begay*, again found that facilitation of the burglary of a building was a violent felony and, accordingly, concluded that Vanhook qualified as an armed career criminal. Beyond stating that facilitation of the burglary of a building was similar to the crimes listed in the ACCA's "otherwise" clause, 18 U.S.C. § 924(e)(2)(B), the court provided no further clarification as to why the crime constitutes a violent felony.

On June 30, 2009, Vanhook timely appealed the district court's conclusion.

### STANDARD OF REVIEW

We review *de novo* a district court's determination that a defendant should be sentenced as an armed career criminal. *Sawyers*, 409 F.3d at 736.

### ANALYSIS

The ACCA provides that "a person who violates [§] 922(g) of this title and has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, . . . shall be fined under this title and imprisoned not less than fifteen years." 18 U.S.C. § 924(e)(1). Section 924(e)(2)(B), in turn, defines a "violent felony" as any crime punishable by imprisonment of more than one year that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another" or "(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B).

In determining whether a particular offense qualifies as a violent felony, courts must use the "categorical approach." That is, they must not consider the individual facts and circumstances of the offense, but rather must only look to the statutory terms of the alleged felony. *United States v. Bartee*, 529 F.3d 357, 359 (6th Cir. 2008); *see also James v. United States*, 550 U.S. 192, 202 (2007).[1] If, however, the statutory definition is ambiguous – it covers some actions which would constitute non-violent felonies and other actions that would not constitute violent felonies – the court may expand its inquiry beyond the statute's text. In such cases, the court may additionally consider the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented" to see if they "necessarily" establish the nature of the prior offense. *United States v. Foreman*, 436 F.3d 638, 641 (6th Cir. 2006); *see also Shepard v. United States*, 544 U.S. 13, 26 (2005).

---

[1] This approach "avoid[s] 'the practical difficulties and potential unfairness' of permitting a sentencing court to relitigate facts and delve into the details of a prior conviction." *Bartee*, 529 F.3d at 359 (quoting *United States v. Armstead*, 467 F.3d 943, 947 (6th Cir. 2006)).

The parties agree that the first clause of § 924(e)(2)(B) is not applicable here; the Tennessee offense of facilitation of the burglary of a building does not have as one of its elements the use, attempted use, or threatened use of physical force against another. Rather, the dispute in this case centers upon whether the ACCA's second clause – the "otherwise" clause – covers the offense at issue.

As noted, the Sixth Circuit initially considered Vanhook's appeal of his classification as an armed career criminal prior to the Supreme Court's decision in *Begay*.[2] Under the pre-*Begay* framework, the only relevant question was whether the offense posed a serious risk of physical injury to others. *James*, 550 U.S. at 207-08. Given the limited nature of the inquiry, this and other courts repeatedly found a broad range of offenses, including some different in kind from the offenses specified in the ACCA, to be violent felonies. *See e.g., United States v. Gibbs*, 626 F.3d 344, 353-54 (6th Cir. 2010) (explaining that the Sixth Circuit no longer adheres to its past rulings which generally treated "walkaway" escape offenses as crimes of violence).

In *Begay*, the Supreme Court, recognizing that certain crimes that posed a serious risk of violence were entirely unlike the crimes Congress had listed in the ACCA, set out a revised framework for determining whether an offense qualifies as a violent felony. *Begay*, 553 U.S. at 143. After *Begay*, whether an offense presents a serious risk of physical injury to others is only the initial inquiry. For a crime to qualify as a violent felony, it must also be similar "in kind as well as in degree of risk posed" to the crimes Congress specifically stated that the otherwise clause applied to. *Id.* That is, the qualifying crime must be "purposeful, violent, and aggressive." *Id.* at 144-45.

---

[2] Generally, "[a] panel of this Court cannot overrule the decision of another panel." *Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001)). However, "this case presents the unique situation in which an inconsistent decision of the United States Supreme Court requires modification of the [prior] decision." *Id.*

### I.   Serious Risk of Harm

Tennessee law punishes three types of burglary: burglary of a habitation (aggravated burglary), burglary of a building, and burglary of a vehicle.  TENN. CODE ANN. §§ 39-14-402, 403. A person is criminally liable for the burglary of a building if he, "without the effective consent of the property owner, [e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony." § 39-14-402(a)(1).  Under Tennessee law, a "person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility [for that offense] . . . the person knowingly furnishes substantial assistance in commission of the felony." § 39-11-403(a).

As this Court noted when initially considering Vanhook's appeal: "Facilitators in Tennessee . . . are not the legal equivalent of accessories before the fact or aiders and abetters, the latter categories being treated the same as principals under the law." *Vanhook*, 510 F.3d at 574; *compare* § 39-11-401(a) *and* § 39-11-402(2) *with* § 39-11-403(a).  Rather, "facilitation of the commission of a felony is an offense of the class next below the felony facilitated by the person so charged." § 39-11-403(b); *see also State v. Fowler*, 23 S.W.3d 285, 288 (Tenn. 2000) ("[F]acilitation is a lesser-included offense when a defendant is charged with criminal responsibility for the conduct of another.").

As the statutory definition of facilitation of the burglary of a building is clear and unambiguous, *see* TENN. CODE ANN. § 39-11-403 (facilitation of a felony), and § 39-14-402(a)(1) (burglary of a building), we simply need to examine the relevant statutory elements in order to determine whether Vanhook's prior conviction constituted a violent felony under § 924(e)(2)(B)(ii).  *See Sawyers*, 409 F.3d at 736.

Even after *Begay*, there remains little question that the act of facilitating the burglary of a building creates a serious risk of violence.  As noted, *Begay* held that for a crime to fall within the otherwise clause it must pose a similar degree of risk of physical injury as the example crimes and be similar in kind to them.  The Supreme

Court did not take issue with the Tenth Circuit's conclusion, in *Begay*, that driving under the influence poses a significant threat of injury to another. Accordingly, *Begay* does not impact our court's earlier holdings that facilitation of burglary poses a risk of physical injury to another that is similar to the crimes listed.

Furthermore, beyond merely this Court's precedents we have good reason to reach the conclusion we do. As the Supreme Court has explained, burglary-related offenses often involve the serious potential for physical injury. "The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." *Taylor v. United States*, 495 U.S. 575, 588 (1990).

Vanhook attempts to distinguish facilitation of burglary from other burglary offenses on the grounds that it requires less criminal culpability than other burglary offenses. Additionally, Vanhook argues facilitation of burglary is merely a lesser included offense of burglary. While these certainly are the case, they are not relevant to the inquiry under the first prong of the test. Regardless of whether facilitation of the burglary of a building requires less culpability than other burglary offenses or whether it is a lesser included offense of other crimes, the sole relevant question, under the first prong, is whether the crime created a serious risk of harm to others. In this case, the standard is met. By definition, when an individual "facilitates" a burglary, he provides substantial assistance towards the commission of an act which, as explained, has the strong potential of ending in a violent result.[3]

This is not to say that Vanhook does not raise valid points. Rather, arguments concerning whether the offense for which he was convicted is of the proper nature or

---

[3] We are not saying, however, that in every instance where an individual is guilty of having in some way assisted or encouraged the commission of another act which likely will have a violent result, the assistance or encouragement – no matter how minor or unrelated to the violent act – will create a serious risk of violence. There may be circumstances in which the government may choose to criminalize assistance or encouragement so minimal that it would have little or no tangible role in the ultimate occurrence of the violent act. However, we are not faced with such a circumstance here. As noted, facilitation, by definition, requires that the defendant provided substantial assistance towards the commission of the ultimately violent offense.

type to be considered a violent felony are more properly addressed under the second prong of the test.

**II. Similarity to the Enumerated Offenses: Purposeful, Violent, and Aggressive**

A more difficult question is whether facilitation of the burglary of a building is similar in kind to the offenses listed in the "otherwise" clause of the ACCA; specifically whether it is "purposeful, violent, and aggressive." *Begay*, 553 U.S. at 144-45.

As noted, in *Begay*, the Supreme Court reversed the Tenth Circuit's finding that driving under the influence constitutes a violent felony. *Id.* at 148. The Court reasoned that while driving under the influence created a serious risk of physical injury to another, because it did not require that the defendant have acted with any intent to cause such injury, it was essentially similar to crimes which imposed strict liability on offenders. *Id.* at 145. Such crimes, because they imposed liability on the defendant regardless of the intent he or she possessed at the time of the crime, were clearly different from the crimes Congress listed in the ACCA, each of which involved purposeful conduct on the part of the defendant. *Id.* at 146. Accordingly, Congress when creating the clause was not referring to such crimes: "We have no reason to believe that Congress intended to bring within the statute's scope these kinds of crimes, far removed as they are from the deliberate kind of behavior associated with violent criminal use of firearms." *Id.* at 147.

Though they were not before the Court, the Supreme Court additionally listed several other offenses which only require that the defendant have acted recklessly as examples of crimes not sufficiently purposeful such that the ACCA's otherwise clause covers them. *See id.* at 146 (listing reckless pollution and reckless tampering with consumer products as crimes not typically committed by armed career criminals). The Sixth Circuit, among others, has since followed suit finding that several crimes which only require a *mens rea* of recklessness or gross negligence do not qualify as violent felonies under the ACCA. *See United States v. McFalls*, 592 F.3d 707 (6th Cir. 2010) (holding that defendant's conviction under South Carolina's aggravated assault statute did not qualify as a crime of violence because it only required that the defendant acted

recklessly); *United States v. Baker*, 559 F.3d 443 (6th Cir. 2009) (finding that violation of Tennessee reckless endangerment statute did not qualify as a crime of violence); *United States v. Johnson*, 308 F. App'x. 968 (6th Cir. 2009) (same); *United States v. Culbertson*, 389 F. App'x 515, 520 (6th Cir. 2010) (concluding that Michigan manslaughter with a motor vehicle conviction was not a violent felony because defendant must only have acted with gross negligence); *United States v. Johnson*, 376 F. App'x. 205, 207 (3d Cir. 2010) (concluding that "because a Pennsylvania terroristic threats offense requires a minimum *mens rea* of recklessness rather than intent, it is not a 'crime of violence' for purposes of § 2L1.2.").[4]

Meanwhile, courts have continued to find that the ACCA covers aggressive and violent offenses which require that the defendant have acted intentionally. *United States v. Young*, 580 F.3d 373 (6th Cir. 2009) (holding that violation of Michigan fleeing and eluding statute that required the defendant have acted willfully was a violent felony); *United States v. Sykes*, 598 F.3d 334 (7th Cir. 2010) (concluding that conviction under Indiana's fleeing and eluding statute was violent felony because the defendant must have acted knowingly and intentionally); *United States v. Noah*, No. 09-5756, 2010 U.S. App. LEXIS 22922 (6th Cir. Nov. 4, 2010) (finding that Tennessee crime which required that defendant have "unlawfully and intentionally" fled from an officer was a crime of violence).

Similarly, other circuits that have addressed the issue have found that crimes which require that the defendant have acted knowingly are sufficiently purposeful to be considered violent felonies for the ACCA's purposes. *United States v. Crews*, 621 F.3d 849 (9th Cir. 2010) (holding that Oregon second degree assault statute requiring that

---

[4] Given the similarity between the ACCA's definition of "violent felony" and the definition of "crime of violence" contained in the pertinent guideline provision, courts, including this one, have taken the position that authority interpreting one phrase is generally persuasive when interpreting the other. *See, e.g., United States v. Kinsey*, No. 09-5202, 2010 U.S. App. LEXIS 23507, at \*7 (6th Cir. Nov. 15, 2010) (noting that "a 'violent felony' under [the] ACCA, . . . is – for these purposes – treated exactly the same as a 'crime of violence' under the Guidelines"); *United States v. Sprouse*, 394 F.3d 578, 580 (8th Cir. 2005) ("Because the definitions of crime of violence and violent felony are identical, the same analysis applies in determining whether [the defendant's] convictions fall within the conduct defined."); *United States v. Winter*, 22 F.3d 15, 18 n.3 (1st Cir. 1994).

defendant acted knowingly or intentionally was a crime of violence); *United States v. Dismuke*, 593 F.3d 582 (7th Cir. 2010) (concluding that Wisconsin vehicular fleeing offense that punished knowing conduct was a violent felony); *United States v. Hampton*, 585 F.3d 1033 (7th Cir. 2009) (holding that Indiana residential entry statute punishing knowing or intentional conduct is a violent felony); *United States v. Johnson*, 587 F.3d 203 (3d Cir. 2009) (finding that Pennsylvania simple assault statute that criminalized knowing actions was a crime of violence); *United States v. Wilson*, 568 F.3d 670 (8th Cir. 2009) (finding that knowing or intentional conduct prohibited by Missouri child abuse statute was  purposeful); *United States v. Spells*, 537 F.3d 743 (7th Cir. 2008) (finding conduct criminalized by Indiana fleeing and eluding statutes was purposeful because it requires that the defendant have acted knowingly or intentionally).

The Sixth Circuit, however, has yet to directly address the matter.  In *United States v. Mosley*, this Court considered whether a Michigan statute criminalizing the knowing failure to comply with an officer's lawful demand described a crime of violence. 575 F.3d 603, 606-07 (6th Cir. 2009).  While the Court noted that such conduct will often be purposeful, it did not conclusively address the matter.  Rather, the Court concluded that because  the statute encompassed conduct that was neither violent nor aggressive, the conduct was not a crime of violence, regardless of whether it was purposeful.  *Id.* at 607.

This is one of the rare cases in which a statute criminalizing "knowing" conduct does not describe conduct sufficiently purposeful to qualify as a violent felony.  *See id.; Crews*, 621 F.3d at 857 n.7 ("We do not hold that 'knowingly' always suffices under *Begay*, for perhaps there are some offenses that, while committed 'knowingly,' do not typically involve purposeful, violent, and aggressive conduct.").

Importantly, this case is distinguishable from each of the aforementioned in that it presents the novel question of whether an individual commits a purposeful crime when he acts with the knowledge that another intends to commit a crime, but without the intent to commit or assist in the commission of the crime itself.  As noted above, to be guilty of facilitation of a burglary, an individual, by definition, must have acted "without the

intent required for criminal responsibility" for the ultimate criminal act. TENN. CODE ANN. § 39-11-403. This key distinction provides the basis for our decision today. Not only do statutes which criminalize "knowing" conduct generally not exclude individuals who act intentionally, but they, in most cases, assume that the individual, in fact, acted with such intent. For example, in *Crews*, the defendant challenged the lower court's classification of his prior conviction for "knowingly us[ing] a deadly weapon to assault another" as a "crime of violence." 621 F.3d at 855-57. The defendant argued, among other things, that the conduct described by the statute was not sufficiently purposeful to justify a sentencing enhancement. *Id.* at 856. The court rejected this argument, explaining that even though the statute only required that the defendant have acted knowingly, in almost every instance the individual would also have acted intentionally:

> We have trouble imagining a circumstance in which a person could knowingly use a dangerous weapon without intending to do so. Indeed, Crews has not provided any case in which an individual who knowingly engaged in an assault by means of a deadly or dangerous weapon acted without the intent to cause harm. In short, convictions involving knowing use of a deadly weapon typically involve "purposeful" conduct within the meaning of *Begay*.

*Id.* at 856-57. An examination of the other "knowing" crimes found to be sufficiently purposeful to be considered violent felonies or crimes of violence reveal that they likewise would almost always require the defendant to have acted intentionally.[5] This

---

[5] For example, in *United States v. Hampton*, the Seventh Circuit held that an Indiana statute that criminalized knowingly entering the residence of another qualified as a violent felony. 585 F.3d 1033, 1044 (7th Cir. 2009). It is difficult to understand how a defendant could knowingly enter the home of another without intending to do so. Similarly, it would be difficult to imagine a scenario under which an individual may knowingly inflict cruel and inhuman punishment upon a child, knowingly flee from a police officer after the officer has clearly identified himself or herself, or knowingly assault another person and not act with the intent to commit each of the aforementioned acts. *United States v. Wilson*, 568 F.3d 670 (8th Cir. 2009) (finding that knowing or intentional conduct prohibited by Missouri child abuse statute was purposeful); *United States v. Spells*, 537 F.3d 343 (7th Cir. 2008) (finding knowing or intentional conduct criminalized by Indiana fleeing and eluding statutes was purposeful); *United States v. Johnson*, 587 F.3d 203 (3d Cir. 2009) (holding that Pennsylvania simple assault statute criminalizing knowing actions is a crime of violence).

case, in contrast, presents a situation in which the intent to commit or assist will be lacking not merely in one instance, but in every instance.**6**

Our decision is further buttressed by the fact that facilitation of burglary is not necessarily the type of violent or aggressive crime generally characterized as a violent felony. Aggressive, violent acts are "aimed at other persons or property where persons might be located and thereby injured." *United States v. Archer*, 531 F.3d 1347, 1351 (11th Cir. 2008). "They involve overt, active conduct that results in harm to a person or property." *United States v. Polk*, 577 F.3d 515, 519 (3d Cir. 2009); *see also United States v. Herrick*, 545 F.3d 53, 58 (1st Cir. 2008) ("[A]ggressive may be defined as 'tending toward or exhibiting aggression,' which in turn is defined as 'a forceful action or procedure (as an unprovoked attack) esp[ecially] when intended to dominate or master.' Violence may be defined as 'marked by extreme force or sudden intense activity.'" (citation omitted)). A cursory review of convictions under the statute reveals that the actions of defendants guilty of facilitation of the burglary of a building may not meet this standard. For example, in *Tennessee v. Mulholland*, No. 03C01-9410-CR-00396, 1995 Tenn. Crim. App. LEXIS 689 (Aug. 16, 1995), the defendant was convicted of facilitating the burglary of a building because: 1) he provided directions to the home of the victim to a third-party driver on the day of the crime; and 2) was a passenger in a car driven by a third party to the scene of the crime. *Id.* at *6-8. The third-party driver ultimately relied on directions provided by the burglar when driving to the victim's home. *Id.* at *7. At no point did the government present any evidence that the burglar and the defendant spoke of the robbery. Even assuming, as the state court did, that the defendant passenger was aware of the burglar's plan to rob the home, *id.* at *8, it is questionable whether simply providing directions to a third party, which the third party

---

**6** Additionally, we are not the sole court to reach this conclusion. The United States District Court for the Southern District of Texas, upon considering TENN. CODE ANN. § 39-11-403, similarly found that it was too unlike the crimes Congress listed in the ACCA to merit a sentencing enhancement: "The requisite *mens rea* elements differ. A person convicted under [§] 403 does not have to intend to deprive a person of property or intend to put someone in fear of bodily injury; rather [§] 403 requires only that the person knows someone else intends to do so." *United States v. Trejo-Palacios*, 418 F. Supp. 2d 915, 920 (S.D. Tex. 2006).

did not rely upon, would be the type of "violent" and "aggressive" conduct towards which the otherwise clause is directed.

Regardless, the government presents little reason for us to doubt our decision. Rather than addressing the novel issue before this Court – whether facilitation of burglary is sufficiently purposeful, violent, and aggressive – it devotes the virtual entirety of its brief, save one paragraph, to the discussion of whether facilitation of burglary creates a serious risk of violence.  As noted, the Supreme Court's decision in *Begay* did nothing to undercut our previous decision on this point.  It appears  that the government mistakenly conflates the first and second prongs of the test pronounced in *Begay*.   While they sound similar, whether an act creates a serious risk of physical injury and whether an act is violent and aggressive are two distinct inquiries.  While in many cases an act that creates a serious risk of physical injury will be violent and aggressive, the presence of the former in no way dictates the latter.  "*Begay's* second requirement entails more than a mere likelihood that another will be physically injured as a result of the offense – it requires conduct that is similar [in kind] to the comparative offenses. . . . "  *United States v. Marquez*, No. 09-50372, 2010 U.S. App. LEXIS 23359, *45-46 (5th Cir. Nov. 10, 2010) (Dennis, J., dissenting).

Ultimately, the sole argument the government provides in support of its position as to the second prong is the fact that this Court has found convictions under Michigan's fleeing and eluding statute to qualify as violent felonies.  Unfortunately for the government, this argument is of little usefulness.  That one crime was found to be a violent felony in no way implies that another crime with entirely different elements and circumstances should likewise be classified as such.  The crimes are readily distinguishable.  Michigan's fleeing and eluding statute, by definition requires that the assailant have acted purposefully, applying only to those "who willfully fail [] to obey [an officer's] direction."  MICH. COMP. LAWS § 257.602a.  As explained above, Tennessee's facilitation statute extends beyond such persons to include those who do not share the chief perpetrator's intent to burglarize the building.

*CONCLUSION*

For the aforementioned reasons, the district court's classification of defendant Charles Vanhook as an armed career criminal and the resulting sentence it imposed are, hereby, **VACATED**.  We **REMAND** the case to the district court for further proceedings consistent with our decision.