NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0600n.06

No. 13-5401

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 06, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| CHRISTOPHER FARROW, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

BEFORE: MERRITT, BOGGS, and STRANCH, Circuit Judges.

**STRANCH, Circuit Judge.** Christopher Farrow appeals his jury conviction for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). He alleges that the prosecution: (1) shifted the burden of proof to the defense; (2) denigrated defense counsel and its strategy; and (3) commented on defendant's failure to testify. He also appeals his conviction based on an allegedly improper jury instruction. These alleged errors provide no basis for reversal. Farrow additionally appeals his sentence, alleging that the district court incorrectly classified him as an armed career criminal and erroneously included an enhancement. Farrow fails to identify an error in his sentencing. Accordingly, we **AFFIRM** his conviction and sentence.

## I. BACKGROUND

On April 1, 2012, Farrow returned from a grocery store in Memphis, Tennessee and was standing with a group of men in an apartment complex. Individuals associated with the complex flagged down the police and told them about the men. Police officers approached the group and Farrow allegedly ran, as did another man, Kenny Lockhart. During trial, two officers testified to

seeing Farrow possess and toss a gun to the ground as he started to run.  A civilian witness testified that Farrow had shown him the gun at the grocery store and that he had seen Farrow toss the gun.  Lockhart subsequently tried to pick up the gun and was tackled by police.  Farrow was chased down and arrested by the officers.  Farrow's theory of the case was mistaken identity—someone else, most likely Lockhart, initially possessed the gun and tossed it to the ground.

Farrow went to trial.  On cross examination, defense counsel asked Officer Dennis Rodgers whether he had ever stopped Farrow in the apartment complex before this incident.  Officer Rodgers responded that he had never seen Farrow before the incident.  Defense counsel then asked specifically:

> Defense Counsel: Okay. It's your testimony under oath today that you never stopped him and told him if I see you walking through here again, I'm putting you under arrest?
>
> Officer Rodgers: That's correct.

Later, defense counsel asked Detective Brandon Champagne whether he had tested the dropped gun for touch DNA.  Champagne responded:  "No. But you yourself can have the gun tested behind me for DNA if you would like by your investigator."

During the prosecution's closing, the prosecutor referenced the questioning of Officer Rodgers, noting the defense's failure to provide any evidence of the conversation that Officer Rodgers denied having with Farrow:

> Defense counsel also asked Officer Rodgers about what – question, also tried to attack his credibility or give you the [i]llusion of a doubt by asking a questions [sic] like isn't it true that you told the defendant the next time you saw him you were going to arrest him. Might make you think maybe it happened, maybe you are going to hear evidence to that effect at some point.
> Officer Rodgers testified no, he didn't do that. As a matter of fact, I had not seen him prior to that date, you know.
> The neat thing about criminal law is even as defense counsel, sometimes a witness can come in you've never seen before, they can say whatever they want to say.

So like you, I'm sitting there saying, thinking is someone going to come in and testify, is someone going to come water that seed or plant that defense counsel has tried to plant, water that seed. There is no evidence to the contrary.

During its closing, defense counsel referred to Lockhart as "the real defendant" and contended that the prosecution should have called him to testify so the jury could hear from him about possession of the gun. In closing rebuttal, the prosecutor responded that Farrow had the same subpoena powers as the prosecution, though also noting that Farrow had no obligation to put on any proof. The court instructed the jury:

> The defendant has not taken the stand to testify as a witness, but you shall place no significance on this fact. The defendant is presumed innocent, and the burden is upon the government to prove his guilt beyond a reasonable doubt. He is not required to take the stand in his own behalf, and his election not to do so cannot be considered for any purpose against him, nor can any inference be drawn from that fact.

At the jury instruction conference, the prosecution requested that Pattern Criminal Jury Instruction (PCJI) for the Sixth Circuit 8.08 be added to the district court's initial draft. PCJI 8.08 provides:

> (1) Remember that the defendant is only on trial for the particular crime charged in the indictment [and the lesser charges which I described]. Your job is limited to deciding whether the government has proved the crime charged [or one of those lesser charges].
>
> [(2) Also remember that whether anyone else should be prosecuted and convicted for this crime is not a proper matter for you to consider. The possible guilt of others is no defense to a criminal charge. Your job is to decide if the government has proved this defendant guilty. Do not let the possible guilt of others influence your decision in any way.]

This instruction comes with the following use note:

> Bracketed paragraph (2) should be included if the possible guilt of others has been raised as an issue during the trial. Modifications of this paragraph may be necessary in conspiracy, aiding and abetting, alibi or mistaken identification cases, where the possible guilt of others may be a legitimate issue.

PCJI 8.08, Use Note. The commentary states the purpose of the instruction and explains that

whether paragraph (2) should be used depends on the defendant's theory of the case.

Committee Commentary 8.08:
(current through April 1, 2013)

> The purpose of this instruction is twofold. The first purpose is to remind the jurors
> that their verdict is limited to the particular charge made against the defendant.
> The second is to remind them that their verdict is limited to the particular
> defendant who has been charged. The instruction is a plain English restatement of
> various concepts found in comparable instructions.
>
> Paragraph (2) should not be given in every case. If the possible guilt of others has
> not been raised during trial, this paragraph is unnecessary and should be omitted
> to avoid confusion. Note also that this paragraph may require modification in
> cases where vicarious criminal liability is alleged, such as conspiracy or aiding
> and abetting cases. In such cases the jury may be required to decide the guilt of
> other persons not charged in the indictment. Paragraph (2) may also require
> modification in cases in which the defendant has raised an alibi defense or has
> argued mistaken identification. Where the defendant claims that someone else
> committed [the] crime, it may be confusing to instruct the jurors that they should
> not be concerned with anyone else's guilt.

PCJI 8.08, Committee Commentary.

The defense objected to the instruction and asked that it not be included or, alternatively,

that a modification be made. The defense proposed adding the statement: "[T]his does not mean

that you should disregard[] the defense's theory that someone other than the defendant

committed this crime. What it means is that your ultimate decision should be based only on

whether the government has proven its case against the defendant beyond a reasonable doubt."

In arguing against use of the instruction or for modification of it, the defense argued: "We have

a theory of the case, . . . our defense is that someone else committed the crime. And under [the]

Sixth Amendment Mr. Farrow is entitled to present a complete defense."

The prosecution initially opposed Farrow's proposed modification. Under the

prosecution's theory of the case, Farrow possessed the gun, then threw it, then Lockhart picked it

-4-

up and possessed the gun. The prosecutor wanted to ensure that the jury would not acquit Farrow merely because Lockhart subsequently possessed the gun. In response, defense counsel suggested changing the proposed modification to "this does not mean that you have to disregard the defense's theory." The district court acknowledged that PCJI 8.08 appeared to directly conflict with Farrow's theory of the case that someone else committed the crime. The prosecution then conceded that the defense theory was based on mistaken identity and agreed that some version of Farrow's proposed modification should be included.

The district court refused to include PCJI 8.08, stating: "Well, out of all the language in the commentary, and in light of the defense, I'm going to deny the government's request for the instruction and we'll just remove it." After closing argument by the defense, however, the prosecution renewed its request for PCJI 8.08. The defense renewed its objection that the instruction would tell the jury to disregard its theory of the case. The court changed its mind, granted the government's request to give PCJI 8.08 and denied Farrow's proposed modification to the instruction even though the prosecution had agreed to part of it.

The court itself modified the pattern instruction by removing the last sentence, "[d]o not let the possible guilt of others influence your decision in any way," and by adding the phrase "your job is to decide if the government has proved this defendant guilty. And you should consider all of the evidence presented by both sides in making your decision." The district court placed modified PCJI 8.08 immediately after the definitional instructions on the elements of the crime. It was the last substantive jury instruction. The district court instructed the jury on joint possession, but did not include specific instruction on Farrow's theory of the case.

The jury found Farrow guilty of being a felon in possession of a firearm. The district court assigned Farrow the "armed career criminal" classification after determining that his two

prior Tennessee convictions for facilitation of aggravated robbery qualify as violent felonies under the Armed Career Criminal Act (ACCA). The district court also applied an enhancement for reckless endangerment. Farrow was sentenced to 240 months of imprisonment.

## II. ANALYSIS

Farrow raises four issues on appeal. He alleges that: (1) three errors occurred during trial; (2) the district court erred by giving jury instructions that told the jury to disregard his theory of the case; (3) the district court incorrectly determined that he qualified as an "armed career criminal" under the ACCA; and (4) the district court erred in applying a reckless endangerment enhancement for sentencing.

### A. Trial Errors

Farrow identifies three alleged trial errors: (1) a prosecutor's statement during closing and testimony by a prosecution witness improperly shifted the burden to the defense; (2) the prosecution's use of the phrase "illusions of doubt" during closing denigrated the defense strategy and deprived Farrow of a fair trial; and (3) the prosecution improperly commented during closing on Farrow's failure to testify.

Because Farrow did not object to the alleged errors at the time, we review for plain error. *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006). Plain-error review evaluates whether: "(1) an error occurred in the district court; (2) the error was obvious or clear; (3) the error affected defendant's substantial rights; and (4) this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001).

**1. Burden-Shifting**

Farrow argues that by faulting the defense for not calling Lockhart as a witness, the prosecution shifted the burden, making it appear that Farrow was obligated to call witnesses to prove his innocence. However, when the defense has questioned why the prosecution has not called a particular witness, the prosecution may respond that the defense also could have called that witness to testify. *United States v. Reynolds*, 534 F. App'x 347, 368 (6th Cir. 2013) (citing *United States v. Gonzalez*, 512 F.3d 285, 292 (6th Cir. 2008)); *United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998) ("[I]t is not improper for a prosecutor to note that the defendant has the same subpoena powers as the government, particularly when done in response to a defendant's argument about the prosecutor's failure to call a specific witness." (internal quotation marks omitted)). The prosecution's statements in closing rebuttal that Farrow had the same subpoena powers to bring Lockhart to testify were in response to defense counsel's statements in closing criticizing the prosecution for not putting Lockhart on the stand. The statements did not shift the burden and do not otherwise constitute plain error.

Farrow makes a similar burden-shifting argument with regard to Detective Champagne's testimony but cites no caselaw in support. The police officer was a witness and did not have a prosecutor's obligations, though even if he had, his statement that the defense could test the gun for DNA was volunteered in response to defense counsel's questions regarding testing the gun. *United States v. Wimbley*, 553 F.3d 455, 461 (6th Cir. 2009) (finding that prosecutor's comment regarding testing evidence was not improper where defense counsel had commented that the government had not tested the evidence). The statement did not shift the burden and it does not constitute plain error.

**2. The phrase "illusions of doubt"**

Farrow also faults the prosecution for using the phrase "illusions of doubt" seven times in closing argument, citing *United States v. Procopio*, 88 F.3d 21 (1st Cir. 1996) for the proposition that repeated use of the term "illusion" can be evidence of error. However, *Procopio* involved a prosecutor directly disparaging both defense counsel and the defense argument. Nonetheless, that court stated that "it is unrealistic to suggest that such empty clichés seriously affected the jury's deliberations." *Id*. at 32. Here, the prosecution's use of "illusions of doubt" was not disparaging, and in rebuttal closing, the prosecution is entitled to point out the lack of evidence supporting the defense theory of the case *See United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005). The prosecution's use of the phrase "illusions of doubt" was not improper.

**3. Comment on Farrow's failure to testify**

Farrow's last alleged trial error merits more consideration. The prosecutor's closing argument noted that Farrow did not offer any evidence of his alleged conversation with Officer Rodgers in which the officer supposedly told Farrow that he would arrest him next time. Farrow argues that this was a comment on his own failure to testify as he was the only other person who could have testified about the conversation.

Defendants have the right under the Fifth Amendment not to testify and the prosecution cannot comment on a defendant's failure to testify. *Griffin v. California*, 380 U.S. 609, 615 (1965). A prosecutor may comment on a defendant's failure to present certain evidence as long as those comments do not implicate the defendant's right to not testify. *See Forrest*, 402 F.3d at 686. This case involves an alleged indirect reference to Farrow's decision not to testify. *United States v. Moore*, 917 F. 2d 215, 225 (6th Cir. 1990). This court considers four factors when determining the constitutionality of such references:

> 1) Were the comments 'manifestly intended' to reflect on the accused's silence or of such a character that the jury would 'naturally and necessarily' take them as such;
>
> 2) were the remarks isolated or extensive;
>
> 3) was the evidence of guilt otherwise overwhelming;
>
> 4) what curative instructions were given and when.

*Lent v. Wells*, 861 F.2d 972, 975 (6th Cir. 1988).

The caselaw on these factors suggests that satisfaction of the first factor is necessary to finding a prosecutor's comment unconstitutional and that a "court must look at all the surrounding circumstances in determining whether or not there has been a constitutional violation." *Butler v. Rose*, 686 F.2d 1163, 1170 (6th Cir. 1982) (en banc). In analyzing the factors, this court may consider the relevance to the overall case of the evidence addressed in the comment, *see United States v. Ursery*, 109 F.3d 1129, 1134 (6th Cir. 1997), and whether the defendant was the only witness who could have contradicted the evidence, *Robinson*, 651 F.2d at 1197. Importantly, this court will not find manifest intent if another explanation is equally plausible. *Lent*, 861 F.2d at 975.

The jury might infer from the prosecution's statement that the only person who could rebut Officer Rodgers's testimony was the defendant, which supports Farrow's contention that the prosecution intended to comment on his failure to testify. However, another intent is equally plausible. *Id.* Because Officer Rodgers was one of only three witnesses testifying that Farrow had a gun, his credibility was important to the prosecution's case. The prosecutor prefaced his closing comments about the alleged conversation by stating that the defense questions were intended to damage Officer Rodgers's credibility. The defense questions were the only reference to this supposed conversation in the entire case, and since Officer Rodgers denies this

conversation, no evidence of it exists in the record. Thus, the prosecutor's comments are plausibly explained as an effort to protect Officer Rodgers's credibility by pointing out that Farrow offered no evidence of the alleged interaction. Moreover, "the question is not whether the jury possibly or even probably would view the remark in this manner, but whether the jury necessarily would have done so." *Ursery*, 109 F.3d at 1135. A jury would not have necessarily taken the remarks as a comment on Farrow's silence because both the questioning and the prosecutor's remarks were vague and the remarks may have related to credibility. The prosecutor's comment was not manifestly intended to comment on Farrow's failure to testify.

The weight of the other factors also supports the Government. Here, the prosecution made only one, relatively unemphasized remark that could be considered a reference to Farrow's failure to testify. *See Raper v. Mintzes*, 706 F.2d 161, 167 (6th Cir. 1983). Though the court did not address the remark at the time, it did give a thorough jury instruction that the defendant was not required to take the stand and that his failure to do so could not be held against him. While the ideal curative instruction is one that directly references improper comments, this is not required to make the curative instruction effective. *See Lent*, 861 F.2d at 977 (noting that the court gave a general instruction but did not specifically mention the improper comments). Finally, the evidence against Farrow was strong. Three witnesses testified that they saw Farrow with the gun. And though Officer Rodgers's testimony was relatively important to the overall case, this alleged conversation did not address any evidence essential to the case.

Analysis of the four factors establishes no error. Had error occurred, Farrow's argument could not survive plain-error review because none of the claimed errors substantially affected his rights. The three trial errors alleged do not render Farrow's conviction reversible.

**B. Jury Instructions**

We review jury instructions for abuse of discretion, *United States v. Russell*, 595 F.3d 633, 642 (6th Cir. 2010), broadly considering whether the instructions fairly and adequately submit the issues and applicable law to the jury, *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991). To determine if the instructions were fair and accurate, we ask whether "the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Russell*, 595 F.3d at 642 (internal quotation marks omitted).

Farrow challenges modified jury instruction PCJI 8.08 as improper because it told the jury to disregard his theory of the case. In many cases it may be appropriate to instruct the jury that the possible guilt of others is not a defense to a criminal charge. *See, e.g.*, *United States v. Young*, 496 F. App'x 570, 578 (6th Cir. 2012). But in this case, the possible guilt of another person for initially possessing the gun *instead of Farrow*, rather than in addition to Farrow, was the defense to the criminal charge. Defendants have a right to have a theory of the case and are entitled to some mention of that theory in the instructions. *See United States v. Theunick*, 651 F.3d 578, 589 (6th Cir. 2011).

The government raises two unpublished circuit cases that address PCJI 8.08: *United States v. Larch*, 399 F. App'x 50 (6th Cir. 2010), and *Young*, 496 F. App'x 570. In both cases, this court found the use of a modified version of PCJI 8.08 to be proper. These cases are distinguishable from this situation because both *Larch* and *Young* involved a defense that other parties were *also* responsible for the crime. In *Young*, noting that both *Larch* and *Young* were not about mistaken identity, this court affirmed the district court's use of PCJI 8.08 and quoted *Larch* for the proposition that the jury "'should not permit the possible *additional* criminal liability of others to influence its decision.'" *Id*. at 578 (quoting *Larch* 399 F. App'x at 55). The

court considered it important that the defense theory did not allege mistaken identity. *Young*, 496 F. App'x 578. In contrast, Farrow's defense was mistaken identity.

PCJI 8.08 is meant to prevent a defense theory that the defendant should be acquitted because someone else was *also* responsible for the crime. *Larch,* 399 F. App'x at 55–56 (the purpose of PCIJ 8.08 is "to ensure that a defendant is not excused from being held accountable *for his actions* simply because someone else *also* unlawfully possessed [the victim's] firearms.") Farrow did not assert such a defense. Farrow's theory that he never possessed the gun necessarily indicated his innocence.

The district court's modification did not wholly remedy the confusion from PCJI 8.08 because it did not remove or even address the statement that the possible guilt of another was no defense, even though it did emphasize that the government had to prove *this* defendant guilty. Farrow's proposed modification—though it also did not remove the problematic line—would have instructed the jury not to disregard the defense theory, which would have countered the prejudice. Moreover, "[a] trial court's refusal to give a requested jury instruction is reversible error only if the instruction is (1) correct, (2) not substantially covered by the actual jury charge, and (3) so important that failure to give it substantially impairs defendant's defense." *United States v. Heath*, 525 F.3d 451, 456 (6th Cir. 2008). The above analysis demonstrates that Farrow's proposed modification was legally correct, not substantially covered by the jury instructions, and its absence substantially impaired the defense. Farrow's proposed modification, moreover, was an alternative request. The defense's primary argument was that PCJI 8.08 should not have been included in any form, an argument that the district court initially accepted.

Based on the record before us, it is reasonable to conclude that the modified PCJI 8.08 instruction given hampered the jury from considering the defense's theory of the case. The other

instructions given failed to remedy the resulting confusion and the district court did not provide additional guidance to the jury, such as a defense-theory instruction. Thus, the instructions, as a whole, were confusing, misleading, or prejudicial and therefore erroneous. *Russell*, 595 F.3d at 642.

We will reverse a verdict on the basis of an erroneous jury instruction, however, only if the error is not harmless. *United States v. Adams*, 583 F.3d 457, 469 (6th Cir. 2009). A jury instruction error is harmless when it is clear beyond a reasonable doubt that the outcome would not change had the jury been properly instructed. *United States v. Mack*, 729 F.3d 594, 608 (6th Cir. 2013).

The evidence identifying Farrow as the initial possessor of the gun was strong and Farrow's theory did not offer a substantiated alternative—no one testified that someone other than Farrow initially possessed the gun and dropped it on the ground. The jury did not have a reasonable basis to disbelieve the testimony of the officers based simply on an unsupported inference that Lockhart or some other unknown, unidentified person may have possessed the gun without being seen. Therefore, the instruction error was harmless because there was no reasonable basis upon which to conclude that the outcome would have changed had the instructions been proper.

## C. ACCA Violent Felony

Farrow appeals his classification as an "armed career criminal" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B). Because Farrow did not present this argument at the sentencing hearing, plain-error review applies. As previously noted, in plain-error review, this court evaluates whether: "(1) an error occurred in the district court; (2) the error was obvious or clear; (3) the error affected defendant's substantial rights; and (4) the adverse impact

seriously affected the fairness, integrity, or public reputation of the judicial proceedings."

*Emuegbunam*, 268 F.3d at 406.

The district court assigned Farrow the "armed career criminal" classification after determining that his two Tennessee convictions for facilitation of aggravated robbery were violent felonies under the ACCA. The ACCA defines "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). Under Tennessee law, "[a] person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under [the statute that criminalizes aiding the commission of an offense], the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39–11–403. Facilitation also requires that the underlying crime actually occur. *United States v. Sawyers*, 409 F.3d 732, 738 (6th Cir. 2005), *abrogated on other grounds by United States v. Vanhook*, 640 F.3d 706 (6th Cir. 2011).

Farrow argues that Sixth Circuit precedent requires a finding that facilitation of aggravated robbery in Tennessee is not a violent felony. Three recent circuit cases have considered whether certain facilitation crimes fall within particular sentencing categories.

In *United States v. Gloss*, 661 F.3d 317 (6th Cir. 2011), we considered whether Tennessee convictions for facilitation of aggravated robbery are violent felonies under the ACCA. *Gloss* analyzed the issue under the "use of force clause," 18 U.S.C. § 924(e)(2)(B)(i), and found that the government must prove every element of aggravated robbery to prove

facilitation of an aggravated robbery. *Gloss*, 661 F.3d at 320. Since aggravated robbery must be "either accomplished with a deadly weapon (or an article disguised as a deadly weapon), or result[] in the victim suffer[ing] serious bodily injury," the use of force is an element of both aggravated robbery and facilitation of aggravated robbery. *Id*. at 319 (internal quotation marks omitted). Therefore, *Gloss* concluded, facilitation of aggravated robbery is a violent felony. *Id*. at 319–20.

Farrow contends that we should follow our opinion in *United States v. Woodruff*, 735 F.3d 445 (6th Cir. 2013), rather than *Gloss*. In *Woodruff*, we considered whether facilitating the sale of cocaine qualified as a controlled-substance offense for the purpose of a sentencing enhancement under the federal sentencing guidelines. 735 F.3d at 449. For a conviction to qualify as a controlled-substance offense under USSG § 4B1.2(b), a defendant must himself have formed intent equivalent to the intent required for "aiding and abetting, conspiracy, and attempt." *Id*. at 449–50 (citing §4B1.2 cmt. n.1). A facilitator, under Tennessee law, lacks such intent. *Id*. at 450–51. Thus, facilitating the sale of cocaine is not a controlled-substance offense. *Id*.

*Woodruff* and *Gloss* are not in conflict because the requirements necessary to qualify a Tennessee facilitation-of-sale-of-cocaine offense as a controlled-substance offense under USSG §4B1.2 are different from the requirements necessary to qualify a Tennessee facilitation-of-aggravated-robbery offense as a violent felony under the "use of force" clause of the ACCA. Unlike a controlled-substance offense under §4B1.2, the ACCA violent felony "use of force" clause includes no intent requirement; it is satisfied here because this case involves a crime under the ACCA "use of force" clause and the use of force is an element of both aggravated robbery and facilitation of aggravated robbery. *Gloss*, 661 F.3d at 320. The intent requirement that was dispositive in *Woodruff* is not applicable here.

The third case to consider facilitation was *Vanhook*, 640 F.3d 706, which analyzed whether Tennessee convictions for facilitation of burglary are violent felonies under the ACCA. The court considered the issue under the "residual clause," § 924(e)(2)(B)(ii), and found that facilitation of burglary was not categorically a violent felony. *Vanhook*, 640 F.3d at 710, 715–16. Farrow argues that because *Vanhook* was issued before *Gloss*, it established a binding analytical framework that *Gloss* failed to follow. *Vanhook*, however, involved facilitation of burglary, not facilitation of aggravated robbery. 640 F.3d at 710. The threat or use of force or violence is not an element of burglary, but it is an element of aggravated robbery. *Id*. at 711; *Gloss*, 661 F.3d at 319–20. Additionally, *Gloss* and *Vanhook* address facilitation under different clauses of the ACCA.

*Gloss* is directly on point as it involves the same crime and the same sentencing scheme at issue in this case. The district court did not err in determining that Farrow's convictions for facilitation of aggravated robbery were violent felonies under the use-of-force clause in §924(e)(2)(B). It properly applied the ACCA.

## D. Reckless Endangerment Sentencing Enhancement

As Farrow concedes, we only reach this issue if we find that the district court erred in applying the ACCA. Because the ACCA applies, we need not address this argument.

### III. CONCLUSION

For the foregoing reason, we **AFFIRM** Farrow's conviction and sentence.