NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0446n.06

No. 16-2169

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Jul 28, 2017

DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,           )
                                    )
    Plaintiff-Appellee,             )
                                    )
                                    )
        v.                          )       ON APPEAL FROM THE
                                    )       UNITED STATES DISTRICT
                                    )       COURT FOR THE EASTERN
SENECA BARNES,                      )       DISTRICT OF MICHIGAN
                                    )
    Defendant-Appellant.            )
                                    )

BEFORE: CLAY, GRIFFIN, and THAPAR, Circuit Judges.

GRIFFIN, Circuit Judge.

A jury convicted Seneca Barnes of conspiring to commit bank fraud in violation of 18 U.S.C. §§ 1344 and 1349. The district court sentenced her to 37 months' imprisonment. On appeal, Barnes argues the government's counsel engaged in prosecutorial misconduct, and claims the district court erred in calculating her attributable loss amount. Because neither contention has merit, we affirm.

I.

Barnes served as a mid-level manager in a scheme to cash counterfeit payroll checks. Terence Randolph and Torin Maddox led the operation. They manufactured and distributed the counterfeit checks and recruited bottom-level participants to cash them. Barnes drove these recruits to various banks in Michigan, Ohio, and Pennsylvania to pass the checks and handled

much of the communication between the leaders and the check cashers. Five of the bottom-level participants testified against her at trial.

After the government presented its proofs against Barnes, the defense rested without calling any witnesses. In his closing statement, defense counsel questioned why the prosecution failed to present several witnesses who, under the government's theory, could have also incriminated Barnes:

> Now, let's talk about the witnesses. Who among the witnesses told you that Seneca Barnes joined into a conspiracy or an agreement to commit bank fraud? Well, not Terence Randolph. He didn't say that. Torin Maddox did not tell you that. You heard the name of Curtis Smith-Thompson . . . . He didn't tell anybody that as far as we know. Scottie Mack who apparently now there is some allegation that we never heard during the trial that because Seneca Barnes had a false I.D. with Chadorea Mack, that somehow that's related to Scottie Mack who is arrested sometime in November when Miss Barnes is not around. Somehow or another, that's supposed to support the idea that Scottie Mack, I guess, would tell you that Seneca Barnes joined into some kind of conspiracy voluntarily and knowingly. We haven't heard that. . . . .

> Now, the government says, wait a minute . . . . There is someone who said that Seneca Barnes had voluntarily and willingly joined into and knowingly joined into a conspiracy and that person is LeQuisha. Government says, well, yeah, LeQuisha Jones, we think it's Jones, now we think it's Smith. . . .

> Did LeQuisha Jones say that to you? Do we see her? Do we know where she is? Do we even know who she is or what her last name really is?

Counsel for the government briefly responded to this argument in her rebuttal: "Well, first, let me say, that the defense has the exact same subpoena power as the United States. If something was missing, they have the same subpoena power as the United States."

Defense counsel moved for a mistrial, claiming the prosecutor's remarks improperly shifted the burden of proof to Barnes. The district court denied the motion. It also denied defendant's request for a "cautionary comment" regarding the government's burden to prove its

case beyond a reasonable doubt, a duty which, even defense counsel agreed, was already "generally covered" by the standard jury instructions.

Ultimately, the jury convicted Barnes, and the district court sentenced her to 37 months' imprisonment—a sentence based in part on the court's finding that Barnes was responsible for $89,880.85 in losses. Defendant now appeals.

II.

Barnes first argues the prosecutor engaged in misconduct when she informed the jury "that the defense has the exact same subpoena power as the United States." Our court applies a two-step inquiry to resolve questions of prosecutorial misconduct. "First, we determine whether prosecutorial statements allegedly constituting misconduct were improper. Next, if we find impropriety, we 'then determine whether the improprieties were flagrant such that a reversal is warranted.'" *United States v. Eaton*, 784 F.3d 298, 309 (6th Cir. 2015) (citation omitted). In this case, Barnes never makes it past step one.

Defendant argues that by nodding to her subpoena power, the prosecutor improperly shifted the burden to defendant to prove her innocence. But "when the defense has questioned why the prosecution has not called a particular witness, the prosecution may respond that the defense also could have called that witness to testify." *United States v. Farrow*, 574 F. App'x 723, 728 (6th Cir. 2014); *see also United States v. Newton*, 389 F.3d 631, 635, 638 (6th Cir. 2004) (defense counsel's complaint that the government did not play a tape recording for the jury "opened the door" to the prosecution's response that defendant "could have played it himself") *vacated on other grounds*, 546 U.S. 803 (2005). In this context, the prosecutor's response is "a fair comment" designed to rebut the insinuation that the witness's testimony would have been

unfavorable to the government—not an improper attempt to shift the burden of proof. *See United States v. Clark*, 982 F.2d 965, 969 (6th Cir. 1993).

Still, Barnes insists the prosecutor's response was improper, because her attorney commented only on the "quantum" of the government's proofs, and not its reasons for failing to call particular witnesses. But the record belies this claim. Defense counsel did not just list missing witnesses; he implied that the government failed to call them because their testimony would not have supported a conviction: "Who among the witnesses told you that Seneca Barnes joined into a conspiracy or an agreement to commit bank fraud?" he asked. "Well, not Terence Randolph. He didn't say that. Torin Maddox did not tell you that." Neither did Scottie Mack or Curtis Smith-Thompson, two individuals who, according to defense counsel, should have been able to testify against Barnes because they were connected to her "[s]omehow or another." When it came to LeQuisha Smith—a woman one co-conspirator said had introduced her to Barnes—defense counsel questioned whether Smith even existed: "Do we see [Smith]? Do we know where she is? Do we even know who she is or what her last name really is?"

Questions like these go not only to quantity but to substance; they insinuate that the government strategically withheld evidence that may undercut its case against defendant. *See, e.g.*, *Newton*, 389 F.3d at 635 ("The defense asked the jury to consider that the government did not play the tape for them, insinuating it was exculpatory and that was the reason why the tape was not played."). Defense counsel cannot be faulted for attempting to leverage the absence of testimony into a jury finding of reasonable doubt. But where his remarks also "impl[y] . . . that the government failed to call a witness because the evidence would have been favorable to the defendant," he "open[s] the door" to the government's rebuttal. *Id.* at 638; *see also United States v. Johnson*, 583 F. App'x 503, 508–09 (6th Cir. 2014).

"It is not improper for a prosecutor to note that the defendant has the same subpoena powers as the government, particularly when done in response to a defendant's argument about the prosecutor's failure to call a specific witness." *Farrow*, 574 F. App'x at 728 (quoting *United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998) (brackets omitted)). Because that is all the prosecutor did here, her statement was not improper.

And even if it was, it was not likely to mislead the jury. Immediately before she made the challenged statement, the prosecutor acknowledged the government must establish Barnes' guilt beyond a reasonable doubt, telling the jury that the government "welcomes that burden," and "would not ask you to convict on less than proof beyond a reasonable doubt." Further, the district court instructed the jury several times "that the government had the burden of proof as to all the elements of its case against the defendant." *Clark*, 982 F.2d at 969. In so doing, the court made clear "that the defendant has no obligation to present any evidence at all, or to prove to you in any way that she is innocent. It is up to the government to prove that she is guilty, and this burden stays on the government from start to finish." We presume the jury followed those instructions in rendering its decision. *Zafiro v. United States*, 506 U.S. 534, 540 (1993).

Because the prosecutor's statement was not improper, there is no need for us to evaluate whether it was flagrant. *Eaton*, 784 F.3d at 309. Defendant's prosecutorial misconduct claim fails.[1]

### III.

Defendant also challenges her 37-month sentence, arguing the district court erred in finding her responsible for $89,880.85 in losses. We review a district court's factual findings

---

[1]As a related matter, defendant claims the district court abused its discretion in declining to give the jury a "cautionary comment" regarding the burden of proof. She argues such an instruction was necessary to cure the prosecutor's improper statement. Because the prosecutor's statement was not improper, we need not address this claim.

concerning the amount of loss for clear error and its methodology for calculating loss de novo. *United States v Triana*, 468 F.3d 308, 321(6th Cir. 2006).

"Section 2B1.l of the sentencing guidelines explains how to calculate losses arising from counterfeit offenses." *United States v. Mickens*, 453 F.3d 668, 670 (6th Cir. 2006). It assigns the defendant a base offense level, then requires an increase to that level dependent upon the amount of loss attributable to the defendant, with a greater loss corresponding to a greater increase. *Id*. at 671; *see also* U.S.S.G. §§ 2B1.1(a)(1) & (b)(1). The commentary to § 2B1.1 defines loss as "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, cmt. n.3(A). Actual loss is "the reasonably foreseeable pecuniary harm that resulted from the offense," and intended loss is "the pecuniary harm that the defendant purposely sought to inflict," including "intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)." *Id.* cmt. n.3(A)(i) & (ii). "Logically, intended loss must include both the amount the victim actually lost and any additional amount that the perpetrator intended the victim to lose." *Mickens*, 453 F.3d at 672–73 (quoting *United States v. Carboni*, 204 F.3d 39, 47 (2d Cir. 2000)).

The presentence investigation report (PSIR) determined Barnes was responsible for an intended loss of $89,880.85—a figure representing the checks her co-conspirators successfully cashed, as well as those police later found in Barnes' vehicle which they did *not* successfully cash. With a loss of more than $40,000 (and less than $95,000), the PSIR applied a six-level increase, *see* U.S.S.G. § 2B1.1(b)(1)(D), resulting in a recommended Guidelines range of 37 to 46 months' imprisonment.

Barnes objected to the calculation. She argued the amount of loss should be limited to the actual loss—i.e., the amount she and her co-conspirators recovered from the checks they

successfully cashed—$28,183.67. Under the Guidelines, this amount of loss triggered only a four-level enhancement, resulting in a lower Guidelines range of 30 to 37 months' imprisonment. Barnes reasons the actual-loss figure of $28,000 is preferable to the intended-loss figure of $89,000 because that is the loss the prosecution established beyond a reasonable doubt at trial, and factual findings affecting a defendant's sentence should be made by a jury beyond a reasonable doubt under *United States v. Booker*, 543 U.S. 220 (2005). The district court rejected her argument, and so do we.

We have explained many times over that "*Booker* did not eliminate judicial factfinding." *United States v. Conaster*, 514 F.3d 508, 527 (6th Cir. 2008) (citation omitted). "By now, it is well established that the preponderance of the evidence standard does not violate *Booker*, so long as the trial court appreciates that the guidelines are advisory, and not binding." *Mickens*, 453 F.3d at 673. Taking a cue from *Mickens*, the district court explained that it did "appreciate that the guidelines are advisory and that the amount of the loss finding is not going to enhance the defendant's sentence beyond the statutory maximum." From there, the court applied the preponderance standard, and found the evidence "more than sufficient" to establish that Barnes "intended to have the[] checks [recovered from her vehicle] cashed pursuant to her involvement in the proven bank fraud conspiracy." Barnes does not challenge this finding and gives us no reason to question the reasonableness of her sentence.

IV.

We therefore affirm the district court's judgment.